**UNITED STATES of America,**
**Appellee,**

v.

**Frank GARGISO, Defendant-Appellant.**

**No. 413, Docket 71-2052.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 10, 1971.

Decided Feb. 18, 1972.

H. Elliot Wales, New York City, for defendant-appellant.

Robert J. Vedatsky, Dept. of Justice, Washington, D. C. (Robert A. Morse, U. S. Atty., E.D.N.Y., Brooklyn, N. Y., Liam S. Coonan, Dept. of Justice, Brooklyn, N. Y., of counsel), for appellee.

Before ANDERSON, OAKES and TIMBERS, Circuit Judges.

OAKES, Circuit Judge.

After a non-jury trial before Judge Dooling in the Eastern District of New York, appellant was convicted on three counts charging him with possession of footwear, greater than $100 in value, stolen from interstate commerce in violation of· 18 U.S.C. § 659.[1] On July 30, 1971, he was sentenced to concurrent prison terms of three years on each count—six months to be served in prison and the balance to be suspended for a three-year probationary period. Appellant asserts that his fourth amendment rights were violated during searches leading to his arrest and that the evidence was insufficient to sustain his conviction. The three factually distinct possession counts will be treated separately for the sake of clarity.

COUNT ONE.

Count One charged possession of 14 cartons of women's boots. On November 18, 1970,[2] one Amalbert, at the direction of appellant, transported ·the 14 cartons from the Key World Travel Agency in Brooklyn, of which appellant

---

1. Appellant concedes that the value of the goods exceeded $100 (which makes a difference only as to penalty under 18 U.S.C. § 659) and that the goods were stolen from interstate commerce.

2. Much of the testimony that led to appellant's conviction was given at the pretrial suppression hearing and read into the trial record by agreement of the parties.

was president, to the basement of the Charles Bohn Company (a book company) in Manhattan, where appellant and Amalbert worked. Acting on a reliable informer's tip that the shoes would be moved on November 18, Federal Bureau of Investigation (FBI) agents, stationed outside the travel agency on that morning, observed Amalbert as he loaded the cartons into an automobile parked on the street.

The agents followed Amalbert as he drove away and questioned him—after warning him of his rights—when he stopped briefly in Brooklyn en route to Manhattan. Amalbert said that he was simply acting as a subordinate and agent of appellant.

During the conversation with Amalbert the agents could plainly see the shoe company name on some labels and the legend "Made in Italy" on all the cartons. Amalbert consented to a search of the automobile, which search showed that the boxes did contain women's boots. He agreed to cooperate with the FBI by carrying out the delivery instructions given to him by appellant. Accordingly, at the book company building in Manhattan, he placed the cartons in a wired-off basement area. The key to this locked area was available to Amalbert and to appellant, as well as to other company personnel. Upon receiving confirmation from FBI headquarters that the boots were stolen, agent McMullen, who had followed Amalbert, spoke about the stolen goods in the basement with the executive vice president of the book company, a Mr. Steubin, in his office. Mr. Steubin took agent McMullen to the basement area and opened the lock for him, after giving the agent permission to search the area. Appellant accompanied the two men to the basement and was arrested after McMullen had searched the area and recognized the boxes as those transported by Amalbert.

After being warned of his rights, appellant denied knowledge regarding the cartons, but then told the agent that he had taken the boots for resale, on a consignment basis, from two truckers whose names and addresses he did not know and from whom he had obtained no information regarding the source of the boots. The truckers, according to appellant, had left the boots at the travel agency, and appellant had sent Amalbert there to get them that morning. At trial, Amalbert testified that in addition to his transportation duties, he had sold boots for appellant to people in the book company building.

Appellant challenges[3] the search at the book company but does not challenge the initial search of Amalbert's car. Thus, the seizure of the boots at the book company (assuming *arguendo* that it violated the fourth amendment) could be viewed simply as "harmless error," Fed.R.Crim.P. 52(a), Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), since the Government had ample proof of its case from the search of Amalbert's car together with Amalbert's testimony.[4] However, we find no error in the search that was conducted here in the course of a diligent investigation. Before searching the basement, agent McMullen obtained the consent of the highest officer of the book company then on the scene. Although appellant had supervisory power over the wired-in area, access to it

3. Appellant, charged with possession of the goods found during the search, has standing to challenge the search and seizure. Simmons v. United States, 390 U.S. 377, 390, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) ; Jones v. United States, 362 U.S. 257, 263–264, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) ; United States v. Price, 447 F.2d 23, 28–29 (2d Cir.), cert. denied, 404 U.S. 912, 92 S.Ct. 232, 30 L.Ed.2d 186 (1971).

4. It has been suggested that it is easier to declare an error involving an exclusionary rule "harmless" when, as here, the case was tried to a court, not to a jury. *See* United States v. Krol, 374 F.2d 776, 779 (7th Cir.), cert. denied, 389 U.S. 835, 88 S.Ct. 46, 19 L.Ed.2d 97 (1967).

was not exclusively his, running also to his superior, the vice president. Consent to a search is effective when given by one whose right to occupancy or possession is at least equal to that of the person contesting the search. Frazier v. Cupp, 394 U.S. 731, 740, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); Reszutek v. United States, 147 F.2d 142 (2d Cir. 1945).

Valid consent to the search having been given, the cases cited by appellant for the proposition that warrantless searches are to be discouraged are inapposite. Chambers v. Moroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), involved, inter alia, the nonconsensual search of an automobile at a police station sometime after the arrest. Vale v. Louisiana, 399 U.S. 30, 34–35, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970), specifically lists consent as one of those "few specially established and well-delineated exceptions," in which warrantless searches of dwellings and a fortiori business establishments are constitutionally allowed. The record shows that Mr. Steubin gave his consent " . . . freely and voluntarily . . . ." Bumper v. North Carolina, 391 U.S. 543, 548, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968) (footnote omitted); see also Coolidge v. New Hampshire, 403 U.S. 443, 484–490, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The evidence recited above was surely sufficient to sustain appellant's conviction on Count One.

## COUNT TWO.

Twelve cartons of women's sandals were found by FBI agents during a search of the basement of the Brooklyn building housing the travel agency. Three tenants occupied the building: the travel agency on the ground floor and two apartment holders on the second floor. The basement was leased to no one, and any tenant was allowed to use it for storage.

█ The search took place contemporaneously with agent McMullen's search at the book company. Permission to search the travel agency offices was denied by appellant's partner Mr. Barberoni, but he expressed no objection to a search of the basement. Agent Clark asked Charles Ciccotto, the owner of the building, for permission to search the basement; the owner agreed and was "happy to cooperate." While Barberoni's agreement to the basement search might arguably be insufficient, ". . . showing no more than acquiescence to a claim of lawful authority," Bumper v. North Carolina, supra 391 U.S. at 549, 88 S.Ct. at 1792, 20 L. Ed.2d 797 (footnote omitted), Ciccotto's willing consent was unquestionably ". . . freely and voluntarily given." Bumper, supra at 548, 88 S.Ct. 1788. This consent alone validates the search. United States v. Botsch, 364 F. 2d 542, 547 (2d Cir. 1966) (2–1 decision), cert. denied, 386 U.S. 937, 87 S.Ct. 959, 17 L.Ed.2d 810 (1967). Here, as in Botsch, and unlike Stoner v. California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964) (hotel clerk has no authority to consent to search of hotel room), relied upon by appellant, the landlord— with access to and interest in an area at least as substantial as his tenant's, or with the tenant's permission—has a right quickly to exculpate himself from suspicion. We are dealing here with a basement storage area used by appellant but under his landlord's control, a situation quite distinct from searches of private quarters held invalid in cases such as Chapman v. United States, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961) (with permission of landlord, who had no key, police entered unlocked window of house rented by defendant).

█ As to the sufficiency of the evidence on Count Two, the cartons were found in the building with which appellant was connected; and both the owner of the building and appellant's own admissions connected him with the travel agency. When questioned by agent McMullen, appellant said that he had seen and inspected the sandals and that he left them in the basement pending their return to the truckers as not-sala-

ble. Appellant's testimony together with the independent evidence connecting him with the travel agency building sufficiently establish the requisite possession. *See* Smith v. United States, 348 U.S. 147, 152–153, 75 S.Ct. 194, 99 L.Ed. 192 (1954) (admission or confession of defendant, without sufficient independent corroborating evidence, not adequate to establish material elements of an offense).

## COUNT THREE.

During the search at the book company described in Count One, agent Mc-Mullen also found four cartons of "chukka" boots stolen from interstate commerce. The search for and seizure of these boots, which were similar in nature to the boots deposited by Amalbert, were reasonable under the fourth amendment for the reasons expressed in our discussion of Count One.

 Appellant contends that possession of these boots was proved only by his admission, which is insufficient under United States v. Smith, *supra.* To corroborate such an admission the Government need not produce independent evidence of every specific element of the crime. United States v. Smith, *supra;* Opper v. United States, 348 U.S. 84, 93, 75 S.Ct. 158, 99 L.Ed. 101 (1954). Rather, it need only produce substantial independent evidence which, together with the admission, establishes all elements of the crime and the admission's trustworthiness. *Smith, supra; Opper, supra;* United States v. Tourine, 428 F.2d 865, 867–868 (2d Cir. 1970), cert. denied, 400 U.S. 1020, 91 S.Ct. 581, 27 L.Ed.2d 631 (1971).[5]

The evidence showed an ongoing plan involving delivery of stolen footwear to the travel agency in Brooklyn, transfer to the book company in Manhattan, and sales in that vicinity. Appellant's statements were corroborated by his agent Amalbert, the FBI agents, and the owner of the Brooklyn building, evidence that can only be considered substantial and independent.

Affirmed as to all counts.

5. Similarly, venue (here in the Eastern District of New York) can be established by the evidence as a whole or by circumstantial evidence. United States v. Budge, 359 F.2d 732, 734 (7th Cir. 1966) ; Holdridge v. United States, 282 F.2d 302, 305 (8th Cir. 1960).