Benjamin **KIRVELAITIS**,
Petitioner-Appellant,

v.

Frank **GRAY**, Supt., Respondent-Appellee.

No. 74–1472.

United States Court of Appeals,
Sixth Circuit.

March 31, 1975.

Benjamin Kirvelaitis, pro se, William P. Meehan, Columbus, Ohio (Court Appointed—CJA), for appellant.

William J. Brown, Atty. Gen., Leo J. Conway, Simon B. Karas, Columbus, Ohio, for appellee.

Before WEICK, McCREE, and MILLER, Circuit Judges.

PER CURIAM.

This appeal is from an order of the district court denying habeas corpus relief under 28 U.S.C. § 2254. On May 5, 1971, appellant was convicted by an Ohio Common Pleas Court jury of first degree murder in the shooting death of a Cleveland taxi driver. He was sentenced to life imprisonment. On February 15, 1973, the Ohio Court of Appeals affirmed the judgment, and on June 14, 1973, the Ohio Supreme Court overruled appellant's motion for leave to appeal.

Appellant then sought habeas corpus relief from the U. S. District Court, contending that several constitutional errors occurred during his trial for murder. Instead of conducting an evidentiary hearing, the district court appropriately relied upon the state court trial transcript and the appellate court decision. The court carefully reviewed each of the issues presented in respect to which state remedies had been exhausted, and determined that no constitutional rights had been violated.

On appeal, the principal issue is whether a search and the seizure of a gun from the apartment in which appellant was living constituted a violation of his Fourth Amendment rights.

The facts surrounding the search indicate that at about 3:30 a. m. on September 15, 1970, about 24 hours after the murder, several officers of the Cleveland Police Department acting on a tip that appellant would be found there, arrived at an apartment building located at 1190 East 79th Street in Cleveland. They did not see appellant's name listed on the mail boxes at the multi-unit dwelling. However, they spoke to Mr. and Mrs. Ferree, ground floor tenants, who indicated that earlier in the evening they had smelled gas possibly coming from the apartment in which appellant was living. The officers then attempted to telephone the apartment but received no answer after permitting the instrument to ring 50 to 60 times. After unsuccessful attempts to gain entrance by knocking on the door and using a key provided by Mrs. Ferree, the officers broke down the door.

Once in the apartment, the officers discovered a Mr. Riboczi, the tenant of the flat, lying asleep in his bed. Mr. Riboczi had not heard the commotion because he was hard of hearing and had removed his hearing aid for the night. The officers awakened Riboczi, showed him a photograph of appellant, and asked whether he lived at that address. Riboczi responded that appellant lived in the next room of the apartment. The officers, with guns drawn, entered the

room and found appellant dressed only in a T-shirt and undershorts under the bed. The police officers kept their guns out while Lt. Joyce placed appellant under arrest and advised him of his rights.

Then, Lt. Joyce asked Riboczi for permission to look around the apartment. Saying he had "nothing to hide," Riboczi consented to the search. The officer also asked appellant for permission, and the officer's testimony at trial was that appellant said, "Go ahead. Look around." During the search, the officers found a loaded gun in the closet about 25 feet from appellant's room.

█ The district judge determined that the consents of both appellant and Riboczi were voluntary and uncoerced. Accordingly, he held that the search did not violate appellant's Fourth Amendment rights. We find nothing in the record to support the conclusion that appellant's consent given at gunpoint was voluntary. See Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).[1] However, we affirm the holding that Mr. Riboczi's consent was untainted.

The trial transcript shows that Riboczi leased the apartment, and, in turn, rented one of its rooms to appellant. The closet in which the gun was found was under the joint control of both appellant and Riboczi. In Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969), the Supreme Court rejected a petitioner's claim of an illegal search where Rawls, a friend of petitioner, consented to the search of a duffel bag jointly used by petitioner and Rawls. "Petitioner, in allowing Rawls to use the bag and in leaving it in his house, must be taken to have assumed the risk that Rawls would allow someone else to look inside." 394 U.S. at 740, 89 S.Ct. at 1425. See McCravy v. Moore, 476 F.2d 281 (6th Cir. 1973), United States v. Gar-

giso, 456 F.2d 584 (2d Cir. 1972), United States v. Alloway, 397 F.2d 105 (6th Cir. 1968). Here, appellant assumed the risk that his co-occupant would consent to a search of apartment areas shared by both.

Appellant also contends that the search was a product of the unlawful entry of the officers. Cf. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). In reviewing the record, the district court determined that the police officers had probable cause to arrest appellant for the murder of the taxi driver, but that the officers had violated appellant's Fourth Amendment rights by failing to announce their presence and purpose before breaking down the door. The district court upheld the subsequent search because the "consent to search was not the product of the arguably unlawful entry."

In United States v. Williams, 351 F.2d 475 (6th Cir. 1965), cert. denied, 383 U.S. 917, 86 S.Ct. 910, 15 L.Ed.2d 671 (1966), we held that narcotics agents' entry into an apartment through an open door without invitation and without announcing their purpose was legal and did not taint a later search and seizure of narcotics. Observing that the Fourth Amendment prohibits unreasonable searches and seizures, we said that " '[r]easonableness' is to be determined in the light of the 'total atmosphere of the case.' " 351 F.2d at 477, citing Go-Bart Importing Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1931) and United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950).

█ We uphold the legality of the seizure in this case because the entry by the police was reasonable under the circumstances. The police had probable cause to believe that appellant was the murderer and that he was living in the apartment with Riboczi. Also, the offi-

---

1. Appellant's brief argues that his consent was involuntary because he had not been advised of his right to refuse permission. In Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854 (1973), the Supreme Court said, "While knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the *sine qua non* of an effective consent." Here, however, the overpowering armed police presence requires additional evidence that the choice was uncoerced beyond appellant's mere assent to the search to permit a finding of voluntariness.

cers tried to call the occupants of the apartment on the telephone. They called from the Ferrees' apartment located immediately below Riboczi's apartment and heard the phone ringing 50–60 times in the apartment above. After receiving no answer, they knocked on the door and tried a key that did not fit the lock before they broke down the door. We hold that it was not unreasonable to dispense with an announcement of presence and purpose under these circumstances.

Affirmed.