**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Carl Will SUMLIN, Defendant-Appellant.**

**No. 77–5076.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 11, 1977.

Decided Dec. 14, 1977.

---

Carl Will Sumlin, pro se.

Philip M. Van Dam, U. S. Atty., Christopher Andreoff, Detroit, Mich., for plaintiff-appellee.

Before CELEBREZZE and PECK, Circuit Judges, and WALINSKI,* District Judge.

CELEBREZZE, Circuit Judge.

Appellant, Carl Will Sumlin, was found guilty by a jury of armed bank robbery, in violation of 18 U.S.C. § 2113(a)(d). He raises two principal issues on appeal. First, can a search and seizure pass constitutional muster when an otherwise valid third-person consent to the search was preceded by a refusal to such consent by the defendant? Second, was use at trial of Appellant's incriminating statements precluded because he allegedly received ineffective assistance of counsel? For reasons stated below, we affirm.

On the afternoon of September 22, 1975, a branch of the Manufacturer's National Bank of Detroit was robbed by a lone gunman. The robber approached the branch manager, displayed his handgun and demanded $50,000. Unaware of the robber's mission, a teller delivered a written telephone message to the manager at this time. The robber handled this note and left it on the manager's desk, enabling the FBI to later glean from it a latent fingerprint. The manager asked another employee to obtain the money demanded and approximately $23,000 in ten and twenty dollar bills bound in Manufacturer's National Bank wrappers was delivered to the gunman, who put it into a paper bag. The robber escaped without further incident.

The FBI shortly thereafter procured a warrant for Appellant's arrest. On October 21, 1975, the National Crime Information Center matched the warrant with a traffic offense record of Appellant's from Dallas, Texas, and notified the Dallas office of the FBI. On October 23, five FBI agents went

H. Wallace Parker, Bloomfield Hills, Mich. (Court-appointed), for defendant-appellant.

---

* The Honorable Nicholas J. Walinski, Judge, United States District Court for the Northern District of Ohio, sitting by designation.

to Appellant's local address, which was a multi-unit apartment complex, and observed a male and female standing next to a parked car which matched a description of Appellant's car. The male matched a description of Appellant and the female matched a description of Appellant's companion on the day of his traffic arrest. Four of the agents walked toward Appellant's apartment. Two agents followed the female as she walked around one side of the building. Two other agents approached the front door of the apartment and entered through a partially open door.[1] They met Appellant and, after properly identifying themselves, placed him under arrest and handcuffed him. Appellant was given *Miranda* warnings which he acknowledged understanding although he refused to sign a written waiver form.

According to the agents, at this point they tried to ascertain who leased the apartment for purposes of seeking consent for a full search. Appellant indicated that the apartment was not leased by him, but by his female companion, Edith Alexander, so no further questions were asked of him. The two agents who had followed Alexander then entered the apartment with her, and she stated that she was the lessee. This was subsequently confirmed by discovery of a lease in her name and signed by her.[2] The agents then procured Alexander's voluntary consent to search the apartment as evidenced by a signed consent form.

According to Appellant, after he was arrested he was asked for permission to search the apartment. Only after he refused, he contends, did the agents seek and procure Alexander's consent. Appellant acknowledges, however, that he did not urge Alexander to withhold consent. He even admits that he told her that her consent need not be withheld since he had nothing to hide.

In any event, a search occurred after obtaining Alexander's consent. The agents seized a .38 caliber handgun,[3] a rental receipt for a safe deposit box in Alexander's name in a Dallas bank, a key to that safe deposit box[4] and the apartment lease. Alexander also consented orally to a search of the safe deposit box. That search took place the next day, at which time a written consent form was signed, and yielded two packages of twenty dollar bills in wrappers bearing the name of the Manufacturer's National Bank of Detroit and stamped with a date a few days prior to the robbery.

Appellant was transported to the Dallas county jail and counsel was appointed for him. The FBI contacted counsel and arranged to interview Appellant. An FBI agent, Appellant and his counsel met in a room at the jail. The agent informed Appellant of his rights and Appellant, with the consent of counsel, consented to the ques-

---

1. The legality of this entry is not challenged on appeal. A warrant for Appellant's arrest had been issued but the FBI had no warrant to search the premises. The search of the premises was conducted pursuant to consent, which we uphold, *infra*, and not as an incident to Appellant's arrest. We thus are not presented with the question of whether an arrest warrant (requiring only probable cause to connect the person sought with the crime), as opposed to a search warrant (requiring probable cause to link the evidence sought both with the crime *and* with the place to be searched), satisfies the warrant requirement of *United States v. Shye*, 492 F.2d 886 (6th Cir. 1974). *Shye*, which followed *Vance v. North Carolina*, 432 F.2d 984 (4th Cir. 1970) and *Dorman v. United States*, 140 U.S.App.D.C. 313, 435 F.2d 385 (1970), is one of a growing number of cases holding that a "warrant" is required for an arrest in the home or other protected dwelling absent an

established exception to the fourth amendment warrant requirement. These cases imply that a search warrant and not just an arrest warrant is necessary, but do not expressly discuss the components of the probable cause required to obtain the "warrant."

2. The lease was in the name of "Carl Alexander" and "Edith Alexander." The former was an assumed name used by Appellant when the two applied for the lease. The lease was signed only by Edith Alexander. The lease had been executed on September 26, 1975, four days after the robbery.

3. The precise location of the gun was revealed by Appellant orally.

4. Alexander volunteered the key after the rental receipt was discovered.

tioning and signed a written waiver form.[5] Appellant then proceeded to make several incriminating statements.

Appellant moved before trial, *inter alia*, to suppress all evidence seized as a result of the warrantless search of the apartment and to suppress all statements made during his Dallas county jail questioning. The District Court denied both motions after an evidentiary hearing. The Court reasoned that Alexander's consent to the search was voluntary and efficacious under *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). It further reasoned that the statements were voluntary.[6]

At trial, the bank branch manager described the robbery and identified Appellant as the robber. He identified the gun seized from the Dallas apartment as resembling that used in the robbery. Another bank employee related obtaining the money from the vault, mostly in twenty dollar bills, all in Manufacturer's National Bank wrappers. She also made a tentative identification of Appellant as the robber. A third bank employee testified about delivering the note to the branch manager, which note was handled by the robber. She positively identified Appellant as the robber. A Dallas FBI agent related the incriminating statements made by Appellant at the Dallas county jail. Further FBI testimony described recovery of the money, in Manufacturer's wrappers, from the Dallas bank. An FBI fingerprint expert identified a latent fingerprint,[7] found on the note handled by the robber in the bank, as Appellant's.

Appellant has raised two principal issues on appeal. The first issue is whether his initial refusal to consent to the search of the apartment[8] precluded the FBI agents from obtaining consent from Alexander. He argues that his initial refusal to consent made further attempts at procuring consent constitutionally impermissible. We disagree.

It is well settled that a search conducted pursuant to voluntarily obtained consent comes within an exception to the general warrant requirement of the fourth amendment. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). It is equally well settled that a third person, other than the defendant, can consent to a search of a defendant's premises or effects if that third person has common authority over the premises or effects. *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). *Matlock* did not depend on the defendant's absence for the defendant there had just been arrested in the front yard of the residence when the third person's consent to search was procured. *United States v. Canada*, 527 F.2d 1374, 1379 (9th Cir. 1975), *cert. den.* 429 U.S. 867, 97 S.Ct. 177, 50 L.Ed.2d 147 (1976). *See Kirvelaitis v. Gray*, 513 F.2d 213 (6th Cir.), *cert. den*, 423 U.S. 855, 96 S.Ct. 103, 46 L.Ed.2d 80 (1975).[9]

Appellant attempts to distinguish *Matlock*, however, by virtue of the additional fact here that he initially refused to consent to the search.[10] We fail to perceive any constitutional significance in this addi-

---

**5.** Appellant denied having signed the form despite the presence of his signature on it. The District Court found that he did sign the form, noting, however, that the signature itself was not crucial.

**6.** The Court ruled that no ineffective assistance of counsel claim had been presented to it. The expressed basis of the motion was involuntariness.

**7.** The expert described a "latent fingerprint" as one left on various objects due to the natural moisture on the fingers. This is to be distinguished from an "inked fingerprint," which is one made by applying ink to the fingers and rolling them on a card.

**8.** The District Court did not expressly find that Appellant was asked for his consent and declined. We are willing to assume, solely for purposes of analysis, that Appellant's version of the facts is correct.

**9.** *Kirvelaitis* was decided after *Matlock* but apparently *Matlock* was not brought to the Court's attention since *Matlock* is not cited in *Kirvelaitis*. The case reaches a similar result, however, by analyzing the pre-*Matlock* cases discussed in *Matlock*.

**10.** Again, this assumes that Appellant's version of the facts is correct. *See* note 8, *supra*.

tional fact.[11] The holding of *Matlock* focused on whether or not the "permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." 415 U.S. at 171, 94 S.Ct. at 993. The rationale behind this rule is that a joint occupant assumes the risk of his co-occupant exposing their common private areas to such a search. *Id.* at 171 n. 7, 94 S.Ct. 988. *See United States v. Solimine*, 536 F.2d 703, 707–08 (6th Cir.) *vacated on other grounds* 429 U.S. 990, 97 S.Ct. 517, 50 L.Ed.2d 603 (1976), *reaffirmed as modified* 551 F.2d 124 (6th Cir. 1977); *United States v. Canada*, 527 F.2d at 1379; *Kirvelaitis v. Gray*, 513 F.2d at 215. There is no reasonable expectation of privacy to be protected under such circumstances. We cannot see how the additional fact of Appellant's initial refusal to consent in any way lessened the risk assumed that his co-occupant would consent. This additional fact does not increase a reasonable expectation of privacy.

We hold, therefore, that this cause is governed by *Matlock* despite the slight factual dissimilarity. The District Court found Alexander had the requisite common authority over the premises searched and found that her consent was voluntary. These findings have substantial support in the record [12] and are not clearly erroneous. *United States v. Cepulonis*, 530 F.2d 238, 243 (1st Cir.), *cert. den.* 426 U.S. 908, 922, 96 S.Ct. 2231, 48 L.Ed.2d 834 (1976); *United States v. Race*, 529 F.2d 12, 14–15 (1st Cir. 1976). The search was constitutionally permissible and the District Court did not err in refusing to suppress its fruits.

11. Appellant has been able to point to only one case that gives any weight to this extra element. *People v. Reynolds*, 55 Cal.App.3d 357, 369, 127 Cal.Rptr. 561, 568 (1976). We reject the language in *Reynolds* to that effect. It is *dictum* and is based on California case law.

12. Alexander was the only party to sign the lease, indicating she had primary authority over the apartment. There were no elements of coercion about her consent, which was further evidenced by a signed consent form.

■ The second principal issue Appellant raises is whether the District Court should have suppressed the statements he made to the FBI in the Dallas county jail because he allegedly made them as a result of ineffective assistance of counsel during his interrogation. He argues that his court-appointed counsel, with whom he had consulted only briefly, made only a *pro forma* appearance at the interrogation. This representation, particularly in allowing Appellant to make incriminating statements, allegedly fell below the standards for effective assistance of counsel prescribed by the sixth amendment. Since Appellant did not raise this issue below, we review admission of his statements under the plain error standard of Federal Rule of Criminal Procedure 52(b).[13]

The District Court found and Appellant does not contest on appeal that the statements were voluntarily made after proper *Miranda* warnings and a knowing and intelligent waiver. These findings have ample support in the record and do not constitute plain error.

This leaves us with a somewhat unusual ineffective assistance of counsel claim. Most ineffective assistance of counsel cases deal with alleged shortcomings of attorneys in their handling of trials or related matters, such as pre-trial investigation, motions to suppress evidence or guilty pleas. *See, e. g., McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Michel v. Louisiana*, 350 U.S. 91, 76 S.Ct. 158, 100 L.Ed. 83 (1955); *Beasley v. United States*, 491 F.2d 687 (6th Cir. 1974). Moreover, these cases deal with errors by counsel which may have caused the trial court to reach an incorrect result. In this case, on

13. *See also* Federal Rule of Evidence 103(d).

Appellant also argues that he can raise this issue initially on appeal because he objected to admission of the statements at trial and the ground for the objection was "apparent from the context." Federal Rule of Evidence 103(a)(1). The objection, however, was based on a claim of involuntariness, as was the earlier motion to suppress. This is not the kind of situation contemplated by Rule 103(a)(1).

the other hand, the ineffective assistance of counsel claim arises out of an alleged error by counsel in allowing Appellant to talk to the FBI. This claim is of a different type altogether than those that deal with errors at trial or in trial preparation. There also is no claim here that the evidence in question is untrustworthy or could have led the trial court to reach an unjust result.

■ Assuming, *arguendo*, that Appellant is correct that it was improper to admit his statements, any such error was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Charlton*, 565 F.2d 86 (6th Cir. 1977). The evidence at trial included three eyewitness identifications of Appellant as the robber,[14] eyewitness testimony that the gun seized from Appellant's apartment resembled the gun used in the robbery, expert identification of Appellant's fingerprint on the note handled by the robber, and testimony about the recovery from Appellant's girlfriend's safe deposit box of twenty dollar bills in the wrappers of the robbed bank. Testimony about Appellant's statements to the FBI was not heavily emphasized by the prosecution.

The judgment of the District Court is affirmed.

---

14. Only one of these identifications was made with any reservation.