J.L. FOTI CONSTRUCTION CO., INC., Petitioner,

v.

Raymond J. DONOVAN, Secretary of Labor, Occupational Safety and Health Review Commission, Respondents.

No. 85–3418.

United States Court of Appeals, Sixth Circuit.

Feb. 25, 1986.

Louis H. Orkin, Weiner, Orkin, Abbate & Suit Co., L.P.A., Beachwood, Ohio, Dale A. Nowak, for appellant.

Elizabeth S. Woodruff, U.S. Dept. of Labor, Washington, D.C., Sandra Lord, argued, for appellees.

Before CONTIE and MILBURN, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

PER CURIAM.

This appeal is before the court pursuant to section 11(a) of the Occupational Safety and Health Act of 1970 (the "Act"), 29 U.S.C. § 660(a), on petition of J.L. Foti Construction Company to review an order of the Occupational Safety and Health Review Commission (the "Commission") issued on April 15, 1985.

Following an Occupational Safety and Health Administration ("OSHA") inspection, petitioner was cited for two serious and two nonserious violations of 29 U.S.C. § 654(a)(2). Petitioner contested all the alleged violations and additionally argued that OSHA's inspector did not have the necessary consent to conduct a warrantless inspection. After conducting an evidentiary hearing, the Administrative Law Judge ("ALJ") found that OSHA had obtained proper consent for the inspection, but vacated one of the alleged serious violations on substantive grounds. On review the Commission affirmed the ALJ's decision. For the reasons that follow, we affirm.

I.

In the fall of 1982, petitioner was performing masonry work at the multi-employer construction site of a hospital addition in Willoughby, Ohio. On October 21, 1982, OSHA Inspector Paul Vrabel visited the work site to conduct a general scheduled inspection. Upon arriving at the site, Vrabel identified himself to Charles Weiss, the job superintendent for the general contractor, Albert M. Higley Company. Weiss advised Vrabel that he was instructed to call Joseph Foti, President of Foti Construction, before inspection of petitioner's work areas could take place. Mr. Foti told Vrabel by telephone that OSHA must have a warrant before it could inspect petitioner's work areas. With Weiss' consent, Vrabel proceeded to inspect all the areas of the work site except those areas in which petitioner's employees were working. On October 26, 1982, the inspector returned without a warrant to inspect petitioner's work areas. Weiss again called Mr. Foti, who came to the work site. Once there, Mr. Foti advised Vrabel that he objected to an inspection without a warrant, and Vrabel asserted that a warrant was not required unless the general contractor demanded it. Mr. Foti agreed to let the inspection proceed under protest and accompanied Vrabel on the inspection.

As a result of the second inspection, OSHA issued two citations to petitioner charging two serious and two nonserious violations of the Act. The citations alleged that petitioner had committed serious violations of 29 C.F.R. § 1926.500(d)(1) by failing to properly guard an open-sided floor or platform and 29 C.F.R. § 1926.500(b)(1) by failing to guard a 21″ × 43″ floor opening with standard railings or covers. The citations also alleged nonserious violations of 29 C.F.R. § 1926.451(a)(14) by failing to extend two scaffold planks at least six inches beyond their supports and 29 C.F.R. § 1926.601(b)(4) by operating a highlift with an obstructed view to the rear in reverse without sounding a reverse signal alarm or posting an observer.

The ALJ found that the general contractor controlled and had a right of access to the entire work site, including petitioner's work areas, and that the general contractor's superintendent consented to an inspection of the entire project. The ALJ found no evidence of any agreement between the general contractor and petitioner

which provided that the general contractor had a duty to refuse OSHA inspectors access to petitioner's work area without Mr. Foti's consent.

The ALJ found that the unguarded opening in the wall required a guardrail and that its absence constituted a serious violation requiring a $250 penalty. Noting that the inspector acknowledged his measurement of the plank overlap could be off as much as two inches, the ALJ found the Secretary failed to carry his burden of proof with respect to the plank alleged to overlap five and one-half inches but affirmed the violation for the plank alleged to overlap three inches. The ALJ also found that the highlift had an obstructed view to the rear and was being operated in reverse without a reverse signal alarm in operation or a signalman. Finally, the ALJ vacated the alleged violation of 29 C.F.R. § 1926.-500(b)(1) on substantive grounds.

The two Commissioners were divided on whether to affirm the ALJ's ruling on the Fourth Amendment issue. Commissioner Cleary would have affirmed on the ground that the general contractor possessed sufficient access to and control over petitioner's work areas to allow the general contractor to consent to an OSHA inspection of those areas. Chairman Buckley, on the other hand, concluded that the general contractor did not have the authority to consent to the inspection because Mr. Foti was present and objecting to the inspection. The two Commissioners also disagreed on the resolution of the alleged violation of the backup alarm requirement. Commissioner Cleary would have affirmed the ALJ's finding of a nonserious violation, while Chairman Buckley would have vacated the alleged violation. In light of the impasse caused by the two Commissioners' difference of opinion, they agreed to affirm the ALJ's decision in order to allow the case to proceed to a final resolution, but to accord it the precedential value of an unreviewed decision.

On this appeal petitioner argues that OSHA's warrantless inspection of its work activities was conducted without valid consent because (1) Mr. Foti was present and objecting to the inspection, and (2) the general contractor contracted away the right to consent to an OSHA inspection of petitioner's work area. Petitioner also argues that the findings of safety violations by the ALJ are contrary to law and the weight of the evidence.

## II.

■ The Act authorizes two types of inspections: inspection pursuant to a general administrative plan, 29 U.S.C. § 657(a), and an inspection pursuant to a complaint, 29 U.S.C. § 657(f). Although no search warrant or other process is explicitly required by the Act, a search warrant or its equivalent is "constitutionally necessary" to conduct a nonconsensual OSHA inspection. *See Marshall v. Barlow's, Inc.*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978); *Donovan v. A.A. Beiro Construction Co., Inc.*, 746 F.2d 894, 898 (D.C.Cir.1984); *Donovan v. Federal Clearing Die Casting Co.*, 655 F.2d 793, 796 (7th Cir.1981). Since OSHA conducted a warrantless inspection of petitioner's work area, the issue before this court is whether OSHA had obtained valid consent to conduct an inspection.

■ It is well-established that a third party can consent to a search of jointly occupied property, as long as the third party has "common authority" over the premises. In *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974), the Court held that proof of voluntary consent is not limited to proof that consent was given by the victim, but may be established by showing that "permission to search was obtained by a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." The Court reasoned that a joint occupant assumes the risk of his co-occupant exposing their common private areas to a search. Once this risk is assumed, any reasonable expectation of privacy is lost. 415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7.

Petitioner argues that *Matlock* is distinguishable because Mr. Foti was present and objected to the search, whereas in *Mat-*

*lock* the defendant was merely "absent [and] not consenting." This court squarely rejected that argument in *United States v. Sumlin,* 567 F.2d 684 (6th Cir.1977), *cert. denied,* 435 U.S. 932, 98 S.Ct. 1507, 55 L.Ed.2d 529 (1978). In *Sumlin* the defendant and his "female companion" shared an apartment. Following defendant's arrest, he was asked for permission to search the apartment, and he refused. The FBI then obtained the consent of defendant's "female companion" and searched the apartment. Defendant contended that the evidence seized in the search should be suppressed and that the rule of *Matlock* does not control where the interested party has refused to consent. We held that defendant's "female companion" had authority to consent to a search despite the defendant's explicit refusal to consent.

In *Sumlin* we reasoned that "[t]he rationale behind [the rule in *Matlock* ] is that a joint occupant assumes the risk of his co-occupant exposing their common private areas to such a search." 567 F.2d at 688. Under such circumstances, "[t]here is no reasonable expectation of privacy to be protected...." *Id.* The "additional fact" that the interested party has denied consent "does not increase a reasonable expectation of privacy." *Id. See also Beiro,* 746 F.2d at 898; *United States v. Baldwin,* 644 F.2d 381, 383 (5th Cir.1981); *United States v. Bethea,* 598 F.2d 331 (4th Cir.), *cert. denied,* 444 U.S. 860, 100 S.Ct. 124, 62 L.Ed.2d 81 (1979); *United States v. Hendrix,* 595 F.2d 883, 885 (D.C.Cir.1979). Thus, valid third-party consent requires only that the third party have "common authority" over the premises searched and that his consent be voluntary. *Sumlin,* 567 F.2d at 688. Both requirements are satisfied in the instant case. It is undisputed that Higley, the general contractor, had "common authority" over the work site and that Higley voluntarily consented to the inspection.

■ Petitioner argues that even if Higley had common authority over petitioner's work area such that it could consent to an OSHA inspection, Higley contracted away that right by entering into an agreement with petitioner whereby Higley agreed not to allow a warrantless OSHA inspection of petitioner's work areas without Mr. Foti's express consent and without Mr. Foti's presence during the inspection. It was this agreement, petitioner asserts, which gave it an expectation of privacy despite the joint occupancy. The ALJ, however, rejected this contention finding that the evidence did not establish that Higley agreed to refuse all OSHA inspections absent Mr. Foti's consent. The ALJ found that "[t]he evidence established that the agreement between [Mr.] Foti and Higley provided only for the latter to call [Mr. Foti] to permit him to be present before any inspection of Foti's work area." The ALJ's factual determination, if supported by substantial evidence, must be upheld. *See, e.g., Beiro,* 746 F.2d at 894.

The ALJ noted that the written contract contained no assurance that Higley would refuse an OSHA inspection where Mr. Foti objected. Weiss testified that he knew nothing of any contractual restriction on Higley's ability to allow OSHA to inspect petitioner's work area despite Mr. Foti's testimony that Weiss was one of the persons with whom the agreement was discussed. Weiss testified that his understanding of the agreement was that he would call and notify Mr. Foti whenever an OSHA official was on the site. Mr. Foti testified that he discussed the alleged restriction with other Higley employees; however, these individuals did not testify. The ALJ's finding is supported by substantial evidence. Thus, we conclude that OSHA's inspection of petitioner's work area was conducted pursuant to valid consent.

### III.

Petitioner argues that the evidence presented in this case is insufficient to establish, by a preponderance of the evidence, that petitioner committed the safety violations found by the ALJ. Our review of the ALJ's findings of fact is limited to determining whether the findings are "sup-

ported by substantial evidence on the record as a whole." 29 U.S.C. § 660(a). *See also Duriro & Co. v. Secretary of Labor,* 750 F.2d 28, 30 (6th Cir.1984); *National Realty and Construction Co. v. OSHRC,* 489 F.2d 1257, 1263 n. 24 (D.C.Cir. 1973). The Commission's view on the preponderance of the evidence is final. *National Realty,* 489 F.2d at 1263 n. 24. Given these standards of review, we proceed to the merits of each safety violation.

## A. *Unguarded Floor or Platform*

■ Petitioner was cited for a serious violation of 29 C.F.R. § 1926.500(d)(1)[1] for failing to guard with standard guardrails or the equivalent an open-sided floor which was more than six feet above an adjacent floor. The ALJ found that the unguarded opening was a portion of the wall on which petitioner's employees were working and which would eventually be closed as the wall was erected. The ALJ noted that a plank was erected across the opening during the course of the inspection, but rejected this as evidence of compliance finding that the board did not meet the requirements of a standard railing.

Petitioner argues that compliance with the guardrail requirement was waived because use of a guardrail at the time of the inspection would have made it impossible for petitioner's employees to perform the work and would have exposed them to greater hazards. However, the evidence does not show that petitioner had failed to erect a guardrail in order to protect its employees or to permit their access to the work area. The inspector testified that he saw no reason why a guardrail could not have been erected to protect the opening. The inspector further testified that during the inspection petitioner erected a makeshift guardrail suggesting that it was, in

fact, feasible to guard against a fall into the opening. Petitioner offered no evidence that a guardrail would have interfered with the work in progress or that a guardrail would have exposed petitioner's employees to a greater risk of injury. The ALJ's finding on this issue is supported by substantial evidence.

The ALJ assessed a penalty of $250 for petitioner's failure to properly guard the open-sided floor. Petitioner argues that the ALJ abused his discretion in setting the penalty because the amount was excessive and because he did not take into consideration the absence of evidence of any prior serious violation. These arguments are without merit. First, the amount of the award is far from the maximum $1,000 allowable for each serious violation of the Act. 29 U.S.C. § 666(b). Second, in assessing the penalty, the ALJ considered the mitigating factors which petitioner asserts are important. The ALJ stated:

> The employer is a relatively small business having twelve employees at the work site and a total of fifteen. The compliance officer saw evidence of [Foti's] good faith efforts to promote safety on the job and did not know of any other serious violation of the Act regulations. Under these circumstances, a penalty of $250 is reasonable and appropriate.

The ALJ acted reasonably and well within his discretion in imposing a total penalty of $250.

## B. *Scaffold Plank Overlap*

■ Petitioner was cited for a nonserious violation of 29 C.F.R. § 1926.-451(a)(14)[2] for failing to assure that the scaffold planks extended over their end supports by more than six inches. The

---

1. 29 C.F.R. § 1926.500(d)(1) provides:
   Every open sided floor or platform six feet or more above adjacent floor or ground level shall be guarded by a standard railing, or the equivalent, as specified in paragraph (f)(1)(i) of this section, on all open sides, except where there is entrance to a ramp, stairway, or fixed ladder. The railing shall be provided with a standard toeboard wherever, beneath the

   open sides, persons can pass, or there is moving machinery, or there is equipment with which falling materials could create a hazard.

2. 29 C.F.R. § 1926.451(a)(14) provides:
   Scaffold planks shall extend over their end supports not less than six inches nor more than twelve inches.

inspector testified that one plank extended over the support three inches and that another plank extended over the support five and one-half inches. The inspector testified that his conclusions were based on a visual estimate of the length of the planks and that his measurement could be off "plus or minus two inches." The ALJ concluded that there was no violation with respect to the plank alleged to extend five and one-half inches over the support because a two-inch margin of error results in a plank that could have been seven inches over the end support. The ALJ further found that even with the two-inch margin of error, the three-inch plank could not have met the regulatory criteria.

Petitioner argues that the inspector's "speculative" testimony was insufficient to sustain the Secretary's burden of proving the violation by a preponderance of the evidence. However, "the Secretary may prove his case on the basis of testimony of an OSHA inspector's 'presumed expertise to estimate lengths [and] distances ... rather than making measurements ... with instruments....'" *Turner Communications Corp. v. OSHRC*, 612 F.2d 941, 945 (5th Cir.1980) (quoting *Stephenson Enterprises, Inc. v. Marshall*, 578 F.2d 1021, 1026 (5th Cir.1978)). The ALJ's finding on this issue is supported by substantial evidence.

### C. The Highlift

■ Petitioner was cited for a violation of 29 C.F.R. § 1926.601(b)(4)[3] for operating a highlift which had an obstructed view to the rear in reverse without using an audible backup alarm or a signalman. The ALJ found that the inspector saw the vehicle being backed up, that the view to the rear was obstructed on one side, and that the vehicle had neither an observer nor an alarm. In so finding, the ALJ discounted Mr. Foti's testimony that the operator had a clear view as being "not convincing."

Petitioner argues that the inspector's testimony should be discredited because it was based on a photograph from a brochure, proffered into evidence, of a highlift that was not the same model as petitioner was using at the job site. This argument is flawed because it ignores the fact that the inspector observed the highlift in use on the site and testified from his observations of that vehicle that the rearward view was "partially obstructed." As Commissioner Cleary noted, "[a] boom and the machine housing on a vehicle are features that are readily apparent, and whether or not they obstruct the view of the operator is readily observable."

Petitioner, relying on *Secretary of Labor v. West Alice Lime and Cement Company*, 2 OSHRC (BNA) 1453 (1974), argues that a "partial" impairment of the view of the driver to "one side" did not render the rear view "obstructed" within the meaning of the regulation. *West Alice Lime* is clearly distinguishable from the instant case. There the Secretary presented no evidence to show an obstructed rear view, whereas in the instant case the inspector's testimony established that the operator's view was obstructed. The ALJ's finding on this issue is supported by substantial evidence.

### IV.

For the reasons stated above, we AFFIRM.

---

**3.** 29 C.F.R. § 1926.601(b)(4) provides:

No employer shall use any motor vehicle equipment having an obstructed view to the rear unless: (i) the vehicle has a reverse signal alarm audible above the surrounding noise level or: (ii) the vehicle is backed up only when an observer signals that it is safe to do so.