STATE OF NEBRASKA, APPELLEE, V. CHAD RAMOLD, APPELLANT.

511 N.W.2d 789

Filed February 8, 1994. No. A-93-322.

Thomas G. Lieske, of Lieske and Kristensen, for appellant.

Don Stenberg, Attorney General, and Donald A. Kohtz for appellee.

SIEVERS, Chief Judge, and IRWIN and MILLER-LERMAN, Judges.

MILLER-LERMAN, Judge.

Chad Ramold, appellant, was found guilty by a jury of burglary, in violation of Neb. Rev. Stat. § 28-507 (Reissue 1989), in the district court for Franklin County. Ramold and his codefendant, Anthony Pittman, were both charged with the residential burglary of Donald and Norma Kennedy's garage in Franklin, Nebraska, on or about June 5, 1992. Pittman pled guilty and testified against Ramold at trial.

Ramold argues on appeal that the trial court erred (1) by denying his motion to suppress the evidence found in the search of the freezer in the trailer he shared with Brook Moff and (2) by denying his motion for mistrial based on the prosecutor's reference to Pittman's guilty plea in the prosecutor's opening statement. For the reasons recited below, we affirm.

## FACTS

On June 5, 1992, Norma Kennedy reported to the Franklin Police Department that the attached garage of her house had been broken into. She reported that a green Army duffelbag and a quantity of frozen meat were missing. The meat was

marked "Alma Locker, Don Kennedy."

The record shows that on June 4 and 5, 1992, Ramold and Pittman were together in the Kearney-Minden-Franklin area and traveled as far south as Kansas. They were together from about noon on June 4 until 5 or 6 a.m. on June 5, when they returned to Ramold's trailer in Hastings. Pittman testified that he and Ramold took the frozen meat from the freezer in the Kennedys' garage. Ramold denied having been in the Kennedys' garage at any time. Ramold further denied having taken anything from that garage. Ramold testified that during the course of their travels, Pittman advised Ramold that Pittman had placed meat in the trunk of the car and that Pittman intended to sell it. Ramold denied knowledge as to the source of the meat.

Ramold was stopped in Hastings on June 5, 1992, at approximately 2:30 p.m. by Hastings police officer John Schakat. Schakat informed Ramold that a burglary had occurred the previous evening in Franklin and that Schakat wished to speak to Ramold concerning the matter. According to Schakat, Officer Lyle Stovall of the Hastings Police Department then arrived at the scene. According to Ramold, Officer John Stevens soon arrived at the scene. Schakat testified that he asked for permission to search the car, and Ramold testified that he consented. A green duffelbag was discovered during the search, and Schakat placed Ramold under arrest.

Schakat testified that he asked for permission to search Ramold's trailer after Ramold's arrest. Ramold testified at the suppression hearing that Schakat asked for permission to search the trailer. At trial, Ramold testified that Stevens asked for permission to search the trailer. In any event, the testimony is universally to the effect that Ramold refused to consent to a search of the trailer. Ramold was then taken to the Hastings police station, where he was placed in custody on a charge of burglary. Ramold testified at the suppression hearing that after he had been taken to the police station he again refused to consent to a search of the trailer.

Schakat and Capt. Steven Murphy of the Hastings Police Department proceeded to Ramold's residence at 101 Smitty's

Trailer Court in Hastings. Murphy testified that Schakat did not inform him that Ramold had refused to consent to a search of the trailer. Finding no one home, Schakat left to obtain a search warrant while Murphy stayed to secure the trailer. Stevens arrived at the trailer court shortly thereafter. According to Murphy, Stevens also did not inform him that Ramold had refused to consent to a search of the trailer.

A few moments later, Moff arrived at the residence. Murphy testified at the suppression hearing that he had reviewed utility and other records on the morning of June 5 and had determined that Ramold and Moff resided at the trailer in question. Murphy asked Moff for permission to search the trailer for the stolen items. She consented to the search. The officers recovered 12 packages of frozen meat bearing the "Alma Locker, Don Kennedy" legend from the freezer in the trailer shared by Ramold and Moff.

Ramold moved to suppress the evidence seized from Ramold or found in the freezer located in the trailer. A suppression hearing was conducted, and the court denied Ramold's motion to suppress. In ruling on the suppression motion, the court did not credit Murphy's claim that he lacked knowledge of Ramold's refusal. The court nevertheless concluded that Moff had common authority over the trailer and that her consent was voluntary. The matter went to trial on January 6 and 7, 1993. Ramold renewed his objection to the introduction of this evidence at trial, and the objection was overruled.

During the State's opening statement to the jury, the prosecutor mentioned that Ramold's codefendant, Pittman, was arrested along with Ramold and was charged with burglary. The jury was also told by the prosecutor that Pittman had entered a plea to the burglary charge and had offered to testify against Ramold. Ramold immediately moved for a mistrial, which motion was overruled. After both parties concluded their opening statements, the court instructed the jury to disregard the prosecutor's remarks in his opening statement regarding the fact that Pittman pled guilty to a charge in connection with the underlying case, and the court then proceeded with the trial. Prior to the beginning of deliberations, the trial court gave the jury instructions pertaining to the comment made by the

prosecutor in his opening statement regarding Pittman, who had appeared as a witness.

## ANALYSIS

*Motion to Suppress.*

Ramold argues that the trial court erred by denying his motion to suppress. In his appellate brief, Ramold limits his argument to admission of the frozen meat into evidence. Ramold claims his constitutional right to be free from unreasonable searches and seizures was violated.

The Nebraska Supreme Court recently observed that in considering an assignment of error claiming improper denial of a motion to suppress,

> the trial court, as the trier of fact, is the sole judge of the credibility of witnesses and the weight to be given to their testimony and other evidence. Moreover, in reviewing a trial court's ruling on suppression of evidence, an appellate court does not reweigh or resolve conflicts in the evidence, but will uphold the trial court's findings of fact unless those findings are clearly erroneous. *State v. Martin*, 243 Neb. 368, 500 N.W.2d 512 (1993); *State v. Bowen*, 232 Neb. 725, 442 N.W.2d 209 (1989); *State v. Marco*, 230 Neb. 355, 432 N.W.2d 1 (1988). In deciding whether a trial court's findings on a motion to suppress are clearly erroneous, an appellate court takes into consideration that the trial court has observed the witnesses testifying regarding such motion. *State v. Martin, supra*; *State v. Ellington*, 242 Neb. 554, 495 N.W.2d 915 (1993); *State v. Van Ackeren*, 242 Neb. 479, 495 N.W.2d 630 (1993).

*State v. Thompson*, 244 Neb. 189, 192, 505 N.W.2d 673, 676 (1993).

The thrust of Ramold's argument, in general, is that his cotenant, Moff, could not properly consent to a warrantless search of the trailer. In particular, Ramold argues that Moff did not give valid consent after Ramold had refused to let the police officers search the trailer. We do not agree.

It is well settled that cotenants and other companions who live with a defendant and have common authority over a

residence or have sufficient relationship to the premises or effects sought to be inspected may voluntarily consent to a warrantless search of a jointly shared facility. *United States v. Matlock*, 415 U.S. 164, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974). The U.S. Supreme Court has indicated that common authority rests on "mutual use" of the property to be searched. *Matlock*, 415 U.S. at 171 n. 7. The Nebraska cases are in agreement. See *State v. Daniels*, 222 Neb. 850, 388 N.W.2d 446 (1986) (holding that cohabitants of a house in which facilities, including basement laundry room, were shared could consent to search of basement which defendant rented). The record of the suppression hearing in this case amply shows that Moff was known to Murphy prior to the search to be a cotenant of the trailer, that Moff's name was on the lease, that Moff admitted living in the trailer with Ramold, and that Moff had equal access to the freezer. Therefore, we agree with the trial court that Moff had common authority over the trailer and the freezer from which the meat was seized.

Ramold argues that even if Moff had common authority over the trailer, her consent to search was not proper because he had refused to permit the search and because she was not made aware of this fact. Although no Nebraska authority could be located regarding the effect that prior refusal has on subsequent consent by another, it has specifically been held by the U.S. Court of Appeals for the Sixth Circuit that the fact of a defendant's refusal to allow a search of the premises is of no constitutional significance in analyzing the propriety of consent by a cotenant. *United States v. Sumlin*, 567 F.2d 684 (6th Cir. 1977), *cert. denied* 435 U.S. 932, 98 S. Ct. 1507, 55 L. Ed. 2d 529 (1978). The rationale behind permitting a third party to consent to a voluntary warrantless search is that "a joint occupant assumes the risk of his [or her] co-occupant exposing their common private areas to such a search." *Sumlin*, 567 F.2d at 688. The *Sumlin* court stated that in the circumstance of cotenancy

[t]here is no reasonable expectation of privacy to be protected under such circumstances. We cannot see how the additional fact of Appellant's initial refusal to consent in any way lessened the risk assumed that his co-occupant

would consent. This additional fact does not increase a reasonable expectation of privacy.

*Id.* Accord *J.L. Foti Const. Co., Inc. v. Donovan*, 786 F.2d 714 (6th Cir. 1986).

Elsewhere, it has been held that

an individual who possesses the requisite degree of control over specific premises is vested in his [or her] own right with the authority to permit an official inspection of such premises and that this authority is not circumscribed by any "reasonable expectation of privacy" belonging to co-occupants. Whether the principle is characterized as an "assumption of risk" or a relinquishment of the "expectation of privacy" guaranteed by the Fourth Amendment, the fact remains that where an individual shares with others common authority over premises or property [the protesting co-occupant] has no right to prevent a search in the face of the knowing and voluntary consent of a co-occupant with equal authority. It then follows that such an individual has no constitutional ground for complaint, in the absence of some other taint arising in connection with the search, when evidence obtained in the search is sought to be used against him [or her] in a subsequent criminal proceeding.

*People v Cosme*, 48 N.Y.2d 286, 292, 397 N.E.2d 1319, 1322-23 (1979).

In the instant case, there is no question that Moff had common authority to consent to a search. The search was reasonable, and according to Murphy, Moff was advised of its purpose. The trial judge questioned Moff, and she, in effect, informed the court that she was not intimidated into consenting to the search. Based on the foregoing, we conclude that the trial court's ruling denying the motion to suppress was not clearly erroneous.

*Prosecutor's Opening Statement.*

Ramold argues that the prosecutor's reference during the opening statement to Pittman's guilty plea and offer to testify was grounds for a mistrial. Ramold claims that the trial court erred in denying his motion for mistrial. We do not agree.

 Regarding motions for mistrial, the Nebraska Supreme Court has stated:

> A mistrial is properly granted only when an event occurs during the course of a trial which is of such a nature that its damaging effects cannot be removed by proper admonition or instruction to the jury and would thus result in preventing a fair trial. The decision to grant a motion for mistrial is within the discretion of the trial court and will be upheld on appeal absent a showing of abuse of discretion. *State v. Palser*, 238 Neb. 193, 469 N.W.2d 753 (1991). In order for error to be predicated upon misconduct of counsel, it must be so flagrant that neither retraction nor rebuke from the court can entirely destroy its influence. *State v. Valdez*, 239 Neb. 453, 476 N.W.2d 814 (1991).
>
> Before it is necessary to grant a mistrial for prosecutorial misconduct, the defendant must show that a substantial miscarriage of justice occurred. *State v. Zaritz*, 235 Neb. 599, 456 N.W.2d 479 (1990); *State v. Valdez, supra*.

*State v. Bronson*, 242 Neb. 931, 946, 496 N.W.2d 882, 893-94 (1993).

Ramold relies primarily on *State v. Robertson*, 219 Neb. 782, 366 N.W.2d 429 (1985), in support of the proposition that evidence of a codefendant's conviction by plea or trial is inadmissible. *Robertson* involved the appeal of the conviction of a defendant for the first degree murder of an Omaha prostitute. Another individual, Carol Joy, appeared at Robertson's trial on behalf of the State and was asked by the prosecutor whether she had already been convicted of the first degree murder of the same victim, to which Joy responded affirmatively. The Nebraska Supreme Court found this inquiry of Joy to be improper. In view of the limited circumstantial evidence against Robertson, the court found that Joy's reference to her conviction before the jury constituted reversible error. Although the reference to the conviction occurred as evidence in *Robertson*, we nevertheless take guidance therefrom.

 In *United States v. Dougherty*, 810 F.2d 763 (8th Cir.

1987), the U.S. Court of Appeals for the Eighth Circuit considered the issue of reference to a codefendant's conviction in an opening statement. The court in *Dougherty* found the remark improper but not prejudicial in that case, based on a review of the remark's cumulative effect, the strength of the evidence, and the curative actions of the court. The *Dougherty* court observed that the remark created the possibility of a mistrial, which was dependent upon the effect the remark had in the context of the entire trial. Based on *Robertson* and *Dougherty*, we agree that a prosecutor's reference to a coperpetrator's conviction in connection with the crime on trial in an opening statement is improper and should not occur. However, such improper reference is not necessarily grounds for mistrial because we must examine for harmless error. See Neb. Rev. Stat. § 27-103(1) (Reissue 1989).

In the instant case, the prosecutor did not again refer to Pittman's plea after the opening statement. The court gave a curative instruction to the jury following this improper remark and before the receipt of evidence, a practice endorsed in *Dougherty*. See, also, *State v. Greeno*, 230 Neb. 568, 432 N.W.2d 547 (1988) (regarding curative measures to remove improprieties). In the instant case, the judge specifically stated:

> Ladies and gentlemen of the jury, before the State begins presenting evidence, there's something I need to bring up, and it's very important that you listen carefully to this. During Mr. Duncan's opening statement, he made reference to the fact that Mr. Pittman entered a plea of guilty to a charge in connection with this case. You are ordered to disregard in its entirety the statement of Mr. Duncan in his opening statement that Tony Pittman has pled guilty regarding this case.

> First, you need to know opening statements are not evidence. That is not admissible evidence at this point in the trial, nor are opening statements of either lawyers evidence. The theory is you might conclude that Chad Ramold is guilty because his acquaintance pled guilty. This is called guilt by association and is not permitted. You may not make any inference from that statement that because Mr. Pittman may have pled, that from that Mr. Ramold is

guilty. That's guilt by association, it is not permitted.

You are to totally disregard and not consider the statement of Mr. Duncan during his opening statement that Anthony Tony Pittman pled guilty regarding this case. It has nothing to do with whether or not Mr. Ramold is or is not guilty. You are instructed to disregard that statement. You have to rely solely on whether the State proves Chad Ramold guilty beyond a reasonable doubt by the evidence presented, not by anything said in opening statements, and not by what Tony Pittman may have pled to.

Okay. With that, the State may call its first witness.

A review of the record shows that the evidence of Ramold's guilt satisfied the State's burden of proof beyond a reasonable doubt. The court's jury instructions regarding deliberations included generous admonitions to the effect that remarks and arguments by attorneys are not evidence, that evidence of a witness' conviction may only be considered to determine credibility of that witness, that Pittman's testimony should be closely examined, and that the jury "should hesitate to convict the defendant if [it] decide[d] that Anthony Pittman testified falsely about an important matter." Coupled with the admonition given by the court after the opening statements and given the substantial direct evidence of guilt adduced at trial, these instructions cured the prosecutor's improper opening remark.

■ The Nebraska Supreme Court has observed that "[t]he impact of any comment made at trial depends on the atmosphere at trial. The trial judge is in a better position to measure the impact a comment has on a jury, and his [or her] decision will not be overturned unless clearly erroneous." *State v. Benzel*, 220 Neb. 466, 477-78, 370 N.W.2d 501, 511 (1985).

Based on the foregoing, we conclude that Ramold did not show a substantial miscarriage of justice based on the prosecutor's remark in his opening statement, and the trial court did not abuse its discretion in denying the motion for mistrial.

AFFIRMED.