1 F.3d 1235
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Lawrence Derick SMALLS, Defendant-Appellant.
 No. 92-5707.
 United States Court of Appeals,
Fourth Circuit.
 Argued: June 11, 1993.
Decided: August 9, 1993.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Durham. William L. Osteen, Sr., District Judge. (CR-92-77-D)
 David Robert Tanis, Winston-Salem, North Carolina, for Appellant.
 Harry L. Hobgood, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.
 Robert H. Edmunds, Jr., United States Attorney, Greensboro, North Carolina, for Appellee.
 M.D.N.C.
 AFFIRMED.
 Before HALL and MURNAGHAN, Circuit Judges, and G. Ross ANDERSON, Jr., United States District Judge for the District of South Carolina, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Lawrence Derick Smalls appeals his convictions for possessing crack cocaine with the intent to distribute (21 U.S.C. Sec. 841(a)(1)) and carrying a firearm during a drug trafficking offense (18 U.S.C. Sec. 924(c)(1)). We affirm.
 
 I.
 
 2
 During a stakeout in Chapel Hill, North Carolina, Officer Frick observed Smalls and Lanice Patterson apparently selling narcotics.[1] In order to confirm his suspicions, Frick arranged for an undercover informant to attempt to purchase crack cocaine from Smalls. The informant was successful, and, after the sale, Smalls walked to a Saab automobile parked a block away, sat inside the car for several minutes, put something in the trunk, set the burglar alarm, and left.
 
 
 3
 Approximately two hours later, Smalls returned to the Saab and attempted to drive away. Officer Gale, who had replaced Frick, used her cruiser to block Smalls' car inside the parking lot, and ordered Smalls to get out of the car with his hands raised. Smalls initially refused, but then got out of the car with his right hand behind his back. As Smalls exited the car, Gale heard a "click" as something fell to the ground. She asked to see Smalls' driver's license, discovered that it was revoked, and arrested him. Gale then asked Smalls if she could search the car; Smalls refused.
 
 
 4
 While he was sitting in the police cruiser, Smalls asked Gale for his jacket, which was on the front seat of the Saab. When Gale reached through the window to remove the jacket she observed a cellular telephone and a pager. She also discovered a .38 caliber derringer and several rounds of ammunition in the jacket's pocket.
 
 
 5
 Checking the Saab's license plate on the Department of Motor Vehicle's computers, Gale discovered that it belonged to Denise Lee.[2] Gale called Lee and asked for permission to search the car. According to Gale, Lee agreed, adding that she was on her way to Chapel Hill. Lee testified at the suppression hearing that she refused to consent to the search.
 
 
 6
 After Lee arrived, the officers again asked her permission to search the Saab. According to the officers, she agreed; again, Lee testified that she refused. The officers searched the car and found a bag containing twenty-five rocks of crack cocaine in the car's trunk and a film canister containing thirty rocks of crack on the ground near where Smalls had been arrested.
 
 
 7
 Smalls was indicted for possessing crack with the intent to distribute and carrying a firearm during and in relation to a drug trafficking crime. The district court denied his motion to suppress the evidence uncovered in the search, ruling that the officers had probable cause to arrest Smalls for selling drugs and that Lee had consented to the search. Smalls proceeded to trial and was convicted. He then filed this appeal.
 
 II.
 
 8
 (Was the arrest proper? )
 
 
 9
 Smalls argues that his arrest was illegal because (a) the arresting officer did not personally witness events giving rise to probable cause to believe that Smalls had committed a crime, and (b) he did not violate N.C. Gen. Stat. Sec. 20-28, which criminalizes driving on the "highway" with a suspended driver's license, because when he was arrested, he was still in the parking lot and had not yet entered the public street. See United States v. Sanders, 954 F.2d 227 (4th Cir. 1992) (accepting a similar legal argument under South Carolina law in a case involving markedly different facts). The point of Smalls' argument is that if the arrest was illegal, then the officers could not execute a search of his vehicle pursuant to his arrest, see New York v. Belton, 453 U.S. 454, 460-61 (1981) (in order to ensure an officer's safety, after a valid custodial arrest of a suspect in an automobile, the officer may conduct a warrantless search of the car's interior), and evidence derived from the arrest must be suppressed.
 
 
 10
 Smalls' argument that Officer Gale lacked probable cause because she did not personally observe him selling drugs misstates the law. The arresting officer need not personally know the facts creating probable cause if she is reasonably acting under the direction of an officer who does possess such knowledge. United States v. Valencia, 913 F.2d 378, 383 (7th Cir. 1990) (arrest is proper so long as the collective knowledge of the agency is sufficient to constitute probable cause); see generally 1 Wayne R. LaFave & Jerold H. Israel, Criminal Procedure Sec. 3.3(e), at 207-08 (1984). When Officer Gale blocked Smalls from leaving the parking lot, she was acting at the direction of Officer Frick, who had arranged a successful undercover purchase of drugs from Smalls. Clearly, the controlled narcotics purchase furnished probable cause to believe that Smalls had committed a felony. See Beck v. Ohio, 379 U.S. 89, 91 (1964) (probable cause is knowledge of facts and circumstances sufficient to warrant a belief by a person of reasonable prudence that an offense has been committed by the person arrested).
 
 
 11
 We do not need to address the merits of Smalls' state law statutory construction argument. Ultimately, it is irrelevant whether his conduct violated N.C. Gen. Stat. Sec. 20-28 because, as Officer Gale testified, Smalls was arrested for selling crack cocaine as well as for driving without a license. Therefore, he would have been arrested regardless of his status under North Carolina's traffic laws. In conclusion, there was no constitutional impropriety in Smalls' arrest.
 
 III.
 
 12
 (Was the search constitutional? )
 
 
 13
 Smalls' second argument is that the search of his automobile violated the Fourth Amendment, and, therefore, the evidence obtained during the search could not be used against him at trial.
 
 
 14
 A. The search of the Saab's interior.
 
 
 15
 Once Smalls was arrested, the officers were allowed to search the Saab's passenger compartment and any containers, including clothes, found within the passenger compartment. Belton, 453 U.S. at 460 (search of jacket on floor of automobile justified as incident to suspect's arrest); United States v. Taylor, 857 F.2d 210, 214 (4th Cir. 1988); United States v. Valiant, 873 F.2d 205, 206 (8th Cir.) (search of passenger compartment valid as search incident to arrest even though defendant handcuffed), cert. denied, 493 U.S. 837 (1989). Thus, the evidence found in the car's interior (the gun and ammunition found in Smalls' sweater, the pager, and the cellular telephone) was not obtained in violation of the Fourth Amendment.
 
 
 16
 B. The search of the Saab's trunk.
 
 
 17
 Because the Belton doctrine expressly does not apply to the trunk of the arrested suspect's vehicle, Belton, 453 U.S. at 460 n.4, we must determine whether the district court properly ruled that the drugs found in the Saab's trunk were admissible under the third party consent doctrine. See United States v. Matlock, 415 U.S. 164, 171 (1974) (any person with common authority over, or other sufficient relationship to, the place or effects being searched can give valid consent). Smalls raises factual and legal challenges to the district court's ruling that Lee consented to the search.
 
 
 18
 There was a factual dispute whether Lee had consented to the search of the Saab. The district court heard the witnesses' testimony and found that Lee had consented to the officers' requests. Given the direct conflict in testimony, and the absence of any factors that would lead us to believe that the officers' version was not credible, we will not second guess the district court's decision to credit their testimony. Anderson v. Bessemer City, 470 U.S. 564, 573 (1985) (district court's factual determinations are reviewed for clear error).
 
 
 19
 Smalls also argues that, once he refused Gale's request to search the automobile, she was precluded from asking any other individual for permission to search it. Because we conclude that Smalls' argument is inconsistent with the rationale of Matlock, we join the other Circuits that have ruled an officer may seek permission to search from a third party with common authority after a suspect refuses the officer's initial request. See United States v. Hendrix, 595 F.2d 883, 885 (D.C. Cir. 1979); United States v. Morales, 861 F.2d 396, 400 n.9 (3d Cir. 1988) (dicta); United States v. Baldwin, 644 F.2d 381, 383 (5th Cir. Unit A 1981); United States v. Sumlin, 567 F.2d 684, 687-88 (6th Cir. 1977), cert. denied, 435 U.S. 932 (1978); see also 1 Wayne R. LaFave & Jerold H. Israel, Criminal Procedure Sec. 3.10(d)(3), at 351 (1984) (cases holding that third party may consent after suspect has refused are consistent with Matlock 's rationale).
 
 
 20
 Matlock rests on the premise that where two people share common authority over a possession or residence, each may independently consent to its search. Although Matlock leaves the precise question, whether one co-owner's refusal binds the other, open, it does establish that each individual's expectation of privacy is reduced because either party may expose the jointly held object's secrets to the rest of the world.[3]
 
 
 21
 Smalls did not even own this car but had merely borrowed it from Lee to use that evening. Under these circumstances, we conclude that he could not have had a reasonable expectation that the officers would be barred from seeking consent from the car's true owner.
 
 
 22
 We have considered Smalls' other arguments and find them to be without merit. The conviction is affirmed.
 
 AFFIRMED
 
 
 [1]
 Smalls would approach pedestrians or the occupants of cars, converse with them, and then be handed something. Patterson would then approach the individuals and hand them something. This pattern of suspicious activity was repeated for approximately one and one-half hours
 
 
 [2]
 Denise Lee is Smalls' common-law wife
 
 
 [3]
 As the Court stated in Sumlin, 567 F.2d at 687-88:
 The rationale behind [Matlock ] is that a joint occupant assumes the risk of his co-occupant exposing their common private areas to such a search. [citations omitted] There is no reasonable expectation of privacy to be protected under such circumstances. We cannot see how the additional fact of [the suspect's] initial refusal to consent in any way lessened the risk assumed that his co-occupant would consent.