## UNITED STATES

v.

**Fernando GARCIA, Staff Sergeant (E–6), U.S. Marine Corps.**

**NMCM 9901513.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 18 March 1998.

Decided 31 Oct. 2002.

LT Glenn Gerding, JAGC, USNR, Appellate Defense Counsel.

LT Lars C. Johnson, JAGC, USNR, Appellate Government Counsel.

LT C.J. Grammiccioni, JAGC, USNR, Appellate Government Counsel.

Before LEO, Chief Judge, RITTER, and FINNIE, Appellate Military Judges.

LEO, Chief Judge:

Contrary to his pleas, the appellant was convicted at a general court-martial before

officer members of two specifications of attempted robbery, five specifications of conspiracy to commit robbery, conspiracy to commit larceny, two specifications of larceny of private property of a value in excess of $100.00, larceny of military property of a value in excess of $100.00, six specifications of robbery, housebreaking, three specifications of illegal interstate transport of a stolen vehicle under 18 U.S.C. § 2312, and illegal interstate transport of stolen property under 18 U.S.C. § 2314, in violation, respectively, of Articles 80, 81, 121, 122, 130, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 881, 921, 922, 930, and 934. The appellant was awarded a dishonorable discharge, confinement for 125 years, forfeiture of all pay and allowances, a fine of $60,000.00, and reduction to pay grade E–1. The convening authority approved only so much of the sentence as provides for a dishonorable discharge, confinement for 75 years, forfeiture of all pay and allowances, a fine of $60,000.00, and reduction to pay grade E–1. He then suspended all confinement in excess of 40 years for a period of 50 years from the date of trial.

We have considered the record of trial, the assignments of error, the Government's answer, the appellant's reply, and the oral arguments of counsel. We conclude that the findings and the approved sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c).

## I. Search and Seizure

The appellant contends that the military judge erred by denying his motion to suppress evidence seized from his home, because the Naval Criminal Investigative Service (NCIS) agents who apprehended him on 9 October 1997 entered his home without his voluntary consent. We disagree.

The appellant was suspected by NCIS of possession of two stolen automobiles and involvement in several recent armed robberies at Camp Lejeune, North Carolina. As a result, he was apprehended, on the morning of 9 October 1997, in front of his home in Jacksonville, North Carolina, by armed NCIS agents. He was made to lie facedown on the ground, as his hands were cuffed behind his back. The apprehension, however, began to attract the attention of people driving by. At one point, an agent had to instruct the occupants of a stopped vehicle to leave the area, causing another agent to ask the appellant if they could relocate to his home. The appellant agreed.

Prior to entering the home, the appellant had his 18–year–old stepdaughter come outside. The agents then entered and conducted a brief security sweep of all the rooms and closets for anyone else that might be hiding inside before bringing the appellant into his home, where he was seated on a sofa in the living room. During their security sweep, the agents did not conduct a search for evidence. When asked if he would consent to a search of his home, the appellant declined. Shortly afterwards, however, he offered to allow a search if his stepdaughter could remain there. The supervising agent declined the offer because of the condition attached to it.

Although the agents had the appellant in custody inside the home, they initiated their search on 9 October 1997 only after receiving telephonic notification that his wife, who had been apprehended separately that morning at her place of work and taken to the Jacksonville Police Department for interrogation, consented to the search their home. She later consented, as well, to an additional search of their home on 17 October 1997. During these searches, the agents recovered property that had been stolen, as well as weapons used to commit charged offenses.

The appellant moved at trial to suppress this evidence, arguing that the agents entered his home without his permission and that neither he nor his wife consented to the searches of their home. He further argued that, even if his wife had consented, the agents exceeded the scope of that consent. After receiving evidence and argument on the motion, the military judge denied the motion to suppress and appended his essential findings of fact and conclusions of law to the record as Appellate Exhibit XLV. He found that the appellant did agree to the agents entry of his home on 9 October 1997.

He further found that the appellant's wife consented to the searches of their home on 9 and 17 October 1997, that her consent was voluntary, and that the agents did not exceed the scope of that consent. However, even if they did, he concluded the evidence seized was still admissible under the doctrine of inevitable discovery. We find that the military judge did not abuse his discretion in denying this motion. His essential findings of fact are supported by the record, and he correctly applied the law in light of the facts. *United States v. Ayala*, 43 M.J. 296, 298 (1995); *United States v. Bruci*, 52 M.J. 750, 753 (N.M.Ct.Crim.App.2000).

Although the appellant did not raise this particular argument at trial, he also contends that the evidence should have been suppressed, because his *on-premises* objection to the NCIS search of his home prevailed over his wife's *off-premises* consent to search the home.

Military Rule of Evidence 103(a)(1), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.) requires that a timely objection to the admission of evidence include "the specific ground of objection, if the specific ground is not apparent from the context." By failing to raise this particular objection at trial so the military judge could rule on it, the appellant did not preserve the issue for appellate review. Therefore, we must test it for "plain error." *United States v. Cardreon*, 52 M.J. 213, 216 (1999); *United States v. Ibarra*, 53 M.J. 616, 618 (N.M.Ct.Crim.App.2000); *accord United States v. Musa*, 45 F.3d 922, 924 (5th Cir.1995)(holding that suppression issue would be reviewed for plain error, because different basis was raised in suppression motion at trial); *United States v. Gomez–Norena*, 908 F.2d 497, 500 (9th Cir.1990)(holding that "a party fails to preserve an evidentiary issue for appeal not only by failing to make a specific objection, but also by making the *wrong* specific objection") (citations omitted); MIL. R. EVID. 103(d).

■ Under military law, third party consent to a search of property is recognized as valid when the party exercises control over that property. *United States v. Clow*, 26 M.J. 176, 183 (C.M.A.1988); *United States v. Reister*, 40 M.J. 666, 669 (N.M.C.M.R.1994),

*aff'd*, 44 M.J. 409, 416 (1996); MIL. R. EVID. 314(e). The appellant concedes his wife was a cotenant of their home and, therefore, was a person authorized to consent to its search. Appellant's Brief of 11 Jul 2001 at 15. However, he argues:

> The military judge erred ... when he concluded that Mrs. Garcia's consent justified the NCIS search over Appellant's on-premises objection.... It is unreasonable to say that where Appellant was *present* and objecting that he assumed the risk of a joint tenancy that an *absent* Mrs. Garcia would vicariously waive his constitutional rights.

*Id.* (emphasis added).

■ The appellant bases his argument on the Supreme Court's decision in *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), recognizing that a third party having "common authority over or other sufficient relationship to the premises or effects to be inspected" may consent to a search of it. He points, in particular, to the treatment that some appellate courts have given to specific language in *Matlock*, wherein the Supreme Court states:

> [M]ore recent authority here clearly indicates that the consent of one who possesses common authority over premises or effects is valid as against the *absent*, nonconsenting person with whom that authority is shared.

*Id.* at 170 (emphasis added). Citing two state appellate court cases as being directly on point, the appellant maintains the consent of an absent cotenant cannot prevail against the constitutional right of a present cotenant who does not consent to a warrantless search. *In re D.A.G.*, 484 N.W.2d 787, 790 (Minn.1992); *State v. Leach*, 113 Wash.2d 735, 782 P.2d 1035, 1040 (1989).

We found no military cases specifically addressing the significance of the distinction that the appellant now raises between an absent consenting cotenant and a present objecting cotenant. However, we believe the majority of appellate cases directly or indirectly addressing this distinction tend to indicate an accused's presence and explicit refusal to consent is "constitutionally insig-

nificant," so long as the consenting cotenant has equal access or control over the premises to be searched. *Charles v. Odum*, 664 F.Supp. 747, 751–52 (S.D.N.Y.1987); *accord United States v. Morning*, 64 F.3d 531, 536 (9th Cir.1995); *United States v. Donlin*, 982 F.2d 31, 33 (1st Cir.1992); *United States v. Baldwin*, 644 F.2d 381, 383 (5th Cir.1981); *United States v. Hendrix*, 595 F.2d 883, 885 (D.C.Cir.1979); *United States v. Sumlin*, 567 F.2d 684, 687 (6th Cir.1977); *People v. Haskett*, 30 Cal.3d 841, 180 Cal.Rptr. 640, 640 P.2d 776, 786 (1982); *People v. Sanders*, 904 P.2d 1311, 1313 (Colo.1995); *In re Anthony F*, 293 Md. 146, 442 A.2d 975, 978–79 (1982); *State v. Ramold*, 2 Neb.App. 545, 511 N.W.2d 789, 792–93 (1994); *State v. Douglas*, 204 N.J.Super. 265, 498 A.2d 364, 370 (App.Div.1985); *People v. Cosme*, 48 N.Y.2d 286, 422 N.Y.S.2d 652, 397 N.E.2d 1319, 1322–23 (1979); *State v. Frame*, 45 Or.App. 723, 609 P.2d 830, 833 (1980); *Cranwell v. Mesec*, 77 Wash.App. 90, 890 P.2d 491, 501 n. 16 (1995); *Laramie v. Hysong*, 808 P.2d 199, 203–04 (Wyo.1991).[1] As the court in *Sumlin* succinctly stated regarding the circumstance of cotenancy:

> There is no reasonable expectation of privacy to be protected under such circumstances. We cannot see how the additional fact of Appellant's initial refusal to consent in any way lessened the risk assumed that his co-occupant would consent. This additional fact does not increase a reasonable expectation of privacy.

*Sumlin*, 567 F.2d at 688. Accordingly, we conclude that the appellant has failed to show that there was error, much less plain error.

## II. Waiver of Article 32, UCMJ, Pretrial Investigation

The appellant contends he was denied a fair trial because of his civilian defense counsel's unconditional waiver of the Article 32, UCMJ, pretrial investigation. We disagree.

In a post-trial declaration, the appellant claims his civilian defense counsel waived the pretrial investigation without his knowledge or consent. Appellant's Declaration of 4 Jul 2001 at ¶ 6. He further states that he would not have authorized such a waiver without obtaining a pretrial agreement from the Government in return. *Id.* In reviewing the written waiver of 18 January 1998, we note that civilian counsel signed not only for himself, but also for the appellant. Civilian counsel made an initial appearance at the appellant's arraignment on 4 February 1998, but did not appear at the next session of court, on 25 February 1998. The appellant advised the military judge that he had dismissed and released his civilian counsel from any further participation in his case. This court issued an order, on 17 June 2002, for civilian counsel to answer the appellant's declaration concerning the unauthorized waiver. On 25 July 2002, the Government responded that it was unable to locate him. Accordingly, the averments in the appellant's declaration as to this particular matter stand unrebutted.

Before charges are referred to a general court-martial, an accused is entitled to a thorough and impartial investigation of those charges. Art. 32(a), UCMJ. The accused is entitled to be present and represented by counsel at the investigative hearing. He may cross-examine available witnesses and present matters on his own behalf. Art. 32(b), UCMJ. Although these procedural requirements are binding on the Government, "failure to follow them does not constitute jurisdictional error." Art. 32(e), UCMJ. The executive rule implementing this article allows an accused to waive the investigation. RULE FOR COURTS-MARTIAL 405(k), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1998 ed.). However, it does not expressly require a personal election by the accused.

The appellant maintains the pretrial investigation is not a mere formality, but a substantial right. *United States v. Nichols*, 8 C.M.A. 119, 124, 23 C.M.R. 343, 348, 1957 WL 4495 (1957). He argues that the denial of this right is *per se* prejudicial and that he need not show actual prejudice to obtain a reversal of his conviction.

---

1. *See also United States v. Medina–Galaviz*, Nos. 98–4007, 98–4014, 1998 WL 883311 (10th Cir. Dec. 18, 1998)(unpublished op. at 14); *United States v. Smalls*, No. 92–5707, 1993 WL 303309 (4th Cir. Aug. 9, 1993)(unpublished op. at 9).

Although we were unable to find any published cases addressing whether or not the waiver of a pretrial investigation requires an accused's personal election, we have in the past held that the better practice is to have a written waiver personally executed by the accused. *United States v. Bell,* No. 900649 (N.M.C.M.R. 31 Jul 1990)(unpublished op.); *United States v. Graham,* No. 860218 (N.M.C.M.R. 31 Oct. 1986)(unpublished op.); *United States v. Harman,* No. 860872 (N.M.C.M.R. 29 Aug. 1986)(unpublished op.).

■ A defense counsel has an ethical duty to keep his client informed of developments in a case, so the client can make informed decisions regarding the representation. American Bar Association (ABA) Standards for Criminal Justice, The Defense Function, Standard 4–3.8 (1993); *accord Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)(noting counsel's duty to "consult with the defendant on important decisions"). Assuming that defense counsel may not waive a pretrial investigation without obtaining his client's consent to do so, civilian counsel erred when he executed the waiver, on 18 January 1998, without consulting with the appellant. This error, however, is not *per se* prejudicial. *See United States v. Davis,* 20 M.J. 61, 66 (C.M.A.1985)(holding that defense counsel's supervisor should not have acted as pretrial investigating officer, but appellant's conviction would not be reversed absent clear demonstration of prejudice); *United States v. Murray,* 25 M.J. 445, 447 (C.M.A.1988)(holding that failure to provide general court-martial convening authority with pretrial advice mandated by Article 34, UCMJ, 10 U.S.C. § 834, was not *per se* prejudicial and reversal required only if accused suffered actual prejudice). The appellant must still show prejudice. Art. 59(a), UCMJ. Accordingly, we will address the issue of prejudice in the discussion that follows on the appellant's claim of ineffective representation.

## III. Ineffective Assistance of Counsel

The appellant contends that he was denied a fair trial because of ineffective assistance of counsel and requests the findings and sentence be set aside or, in the alternative, a remand for a new sentencing hearing. We disagree.

In support of this claim, the appellant asserts an array of complaints, all of which we find to be without merit. Of these, only the following require comment: (1) civilian defense counsel's unauthorized waiver of the Article 32, UCMJ, pretrial investigation and military defense counsel's failure to have the waiver set aside after civilian defense counsel was dismissed; (2) civilian defense counsel's misleading advice regarding an acceptable pretrial agreement and his failure to pursue an agreement with the Government; (3) military defense counsel's failure to advise the appellant to change his pleas from not guilty to guilty; and (4) military defense counsel's inadequate presentation of a sentencing case.

An allegation of ineffective representation constitutes a mixed question of law and fact, which we review *de novo United States v. Hicks,* 52 M.J. 70, 72 (1999); *United States v. Lowe,* 50 M.J. 654, 656 (N.M.Ct.Crim.App. 1999). A military accused is guaranteed the effective assistance of counsel under the Sixth Amendment and Article 27, UCMJ, 10 U.S.C. § 827. *United States v. Scott,* 24 M.J. 186, 187 (C.M.A.1987). In reviewing claims of ineffective assistance of counsel in court-martial cases, our superior court adopted the standard set forth by the Supreme Court in *Strickland United States v. Burt,* 56 M.J. 261, 264 (2002); *Scott,* 24 M.J. at 187.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland,* 466 U.S. at 687, 104 S.Ct. 2052.

Counsel are presumed to be professionally competent. *United States v. Gilley,* 56 M.J. 113, 124 (2001); *Scott,* 24 M.J. at 188. Because it is a "strong presumption," our scrutiny of counsel's performance is "highly def-

erential." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. To rebut this presumption, the appellant must identify "specific errors made by his counsel which were unreasonable under prevailing professional norms" and "[t]he reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Scott,* 24 M.J. at 188.

Until shortly after arraignment, the appellant was represented by military and civilian defense counsel. Civilian counsel was retained from November 1997 until February 1998, during which time the appellant alleges that the civilian counsel waived the pretrial investigation without his consent. We assume from the declarations submitted by the appellant that civilian counsel was lead counsel for this period of time. When he left, military defense counsel represented the appellant at the trial in March 1998. Since the appellant had more than one counsel, we view the combined performance of the defense team, rather than the conduct of civilian counsel alone. *United States v. McConnell,* 55 M.J. 479, 481 (2001); *United States v. Boone,* 42 M.J. 308, 313 (1995).

### A. Performance of Civilian Counsel

■ Although civilian counsel erred if he waived the pretrial investigation without first informing the appellant, this waiver is not *per se* evidence of deficient performance. An unconditional waiver of the pretrial investigation, in some cases, may be more beneficial to an accused than having one. *See United States v. Schaffer,* 12 M.J. 425, 429 (C.M.A.1982)(noting that pretrial investigation may delay speedy trial, reveal additional offenses that were not known by the Government, enable the Government to strengthen its case for trial, or disclose to the Government potential defenses to the charges).

In this case, the appellant had been in pretrial confinement for approximately 100 days when the waiver was signed. Although military defense counsel did not move to set aside the waiver and apparently has no recollection of any discussions with the appellant about doing so, he does recollect that the possibility of a waiver was discussed between counsel and the appellant at their meeting in November or December 1997. Major Kaplan's Declaration of 16 Jul 2002 at ¶¶ 7, 8. The appellant's claim that his counsel never *fully* explained his rights under Article 32, UCMJ, does not contradict military defense counsel's assertion in this regard. *See* Appellant's Declaration of 4 Jul 2001 at ¶ 5. Given the length and complexity of the Government's case, it would not be unreasonable for counsel to conclude that a pretrial investigation would afford the Government an opportunity to perfect its case and perhaps uncover other chargeable offenses, if it chose to call all of its witnesses. Therefore, applying "an objective standard of reasonableness," *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052, we cannot conclude that an unconditional waiver of the pretrial investigation, in and of itself, is deficient.

Finally, even assuming the unauthorized waiver was deficient, the appellant must still show prejudice. The appellant argues that he was prejudiced, because he would have pled guilty in exchange for a reasonable pretrial agreement if he had only "had the opportunity to see and hear the [G]overnment's overwhelming evidence against him." Appellant's Brief of 11 Jul 2001 at 18. We reject this argument. First, it assumes incorrectly that the pretrial investigation would have mirrored the case presented at trial. *United States v. Samuels,* 10 C.M.A. 206, 212, 27 C.M.R. 280, 286, 1959 WL 3613 (1959)(the pretrial investigation is "a preliminary proceeding, not a trial on the merits"). Given the purpose of such an investigation, it is not uncommon that the Government simply introduces the statements of the witnesses from the NCIS investigation report, if the witnesses are not readily available. The appellant makes no claim that this report was not available to him or his counsel. His military defense counsel, in particular, had advised him that he had "no viable defense to the majority of the charges." Major Kaplan's Declaration of 17 Jul 2002 at ¶ 16. We, therefore, find no merit in the appellant's claim that he was unaware before trial of the overwhelming evidence against him.

Second, the reason for the appellant's failure to enter into a pretrial agreement had nothing to do with the evidence in the Government's case. He failed to obtain a pre-

trial agreement, because he did not want to serve a lengthy period of confinement. His military defense counsel had advised him that the Government offered to limit confinement to 25 years, but felt they would accept 20 years. But, as the appellant himself readily admits, he would not agree to serve more than 4–6 years. Even if there had been a pretrial investigation, it is not clear it would have made him more willing to accept an agreement limiting confinement to 20–25 years, notwithstanding his self-serving declaration to that effect.[2] In fact, we question whether the appellant was of a mind then to plead guilty at all, in light of his admission that he did not disclose the full extent of his criminal involvement to his military defense counsel until well into the trial. *See* Appellant's Declaration of 4 Jul 2001 at ¶ 10. Therefore, failing to find a reasonable probability the appellant would have pled guilty but for his counsel's waiver of the pretrial investigation, we hold he was not prejudiced by the waiver.

▮▮▮ The Sixth Amendment right to effective assistance of counsel includes advice on whether or not to enter into a pretrial agreement. *United States v. Day*, 969 F.2d 39, 43 (3d Cir.1992); *Toro*, 940 F.2d at 1067. The appellant claims his civilian counsel's advice concerning a pretrial agreement was deficient, because he was advised not to accept an agreement for more than 4–6 years of confinement. Despite military defense counsel's strong disagreement with this advice, the appellant admits that he elected to adhere to it, even after civilian counsel stopped representing him. Military defense counsel warned that the appellant could realistically expect to receive confinement in excess of 100 years from members and 40–60

years from the military judge and, therefore, urged him to accept a more realistic limit on confinement.

The appellant was not required to accept the advice of either counsel. Ultimate decisions about pleading guilty and accepting a pretrial agreement reside with the accused alone; they are not delegated. ABA Standards for Criminal Justice, The Defense Function, Standard 4–5.2. In this case, the appellant received conflicting advice from his defense team, and he chose to act on what he wanted to believe.[3] He was not misled. We are not inclined, therefore, to find ineffective representation when the full range of options are clearly laid out by the appellant's defense team. More importantly, the advice he received from the counsel who actually represented him at trial was not deficient. The appellant essentially admits as much, because his chief complaint and regret now is that he did not take that advice.

Citing *United States v. Lonetree*, 35 M.J. 396 (C.M.A.1992), however, the appellant argues the advice given him by civilian counsel was sufficient, in and of itself, to establish ineffective assistance of counsel. We believe *Lonetree* is factually distinguishable. We also believe *Lonetree* does not stand for the proposition suggested by the appellant, that the earlier advice of a departed counsel forever taints or overrides conflicting advice from an accused's primary counsel at trial.

In *Lonetree*, our superior court returned the record for a *DuBay* hearing,[4] because it found:

colorable claims consistent with the existing record that civilian counsel offered him bizarre and untenable advice, consistently instilling in him a distrust of his military

---

2. In the absence of other more "objective evidence," it is reasonable to view this after-the-fact assertion with some skepticism. *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir.1991). *See also Paters v. United States*, 159 F.3d 1043, 1047 n. 5 (7th Cir.1998)(noting that petitioner-appellant's post-trial declaration was not objective evidence under *Toro*); *Johnson v. Duckworth*, 793 F.2d 898, 902 n. 3 (7th Cir.1986)(expressing doubt about whether appellant's "after-the-fact testimony" at a post-conviction hearing "would be sufficient to establish that prior to trial, but for [counsel's] actions, there was a reasonable probability he would have accepted the plea

agreement"). A pretrial agreement for confinement of 20–25 years is attractive to the appellant now only because he was sentenced to 125 years of confinement. Without this knowledge, he may not have found that much confinement to be so attractive.

3. The appellant admits his fixation on a pretrial agreement limiting confinement to the 4–6 year range was "an irrational belief." Appellant's Brief of 11 Jul 2001 at 29.

4. *United States v. DuBay*, 17 C.M.A. 147, 37 C.M.R. 411, 1967 WL 4276 (1967).

counsel and consistently inducing him away from a plea bargain agreement assuring him substantial leniency in the face of overwhelming evidence of his guilt. *Lonetree,* 35 M.J. at 413. Our superior court noted that *Lonetree* had previously cooperated with the authorities before civilian counsel intervened, implying that he was amenable to a pretrial agreement. Upon entering the case, it is reasonable to assume civilian counsel took the lead in directing the defense case. They represented and, therefore, *influenced* the accused throughout the course of the trial. The court concluded in *Lonetree* that, under these circumstances, it may only have been because of the suspect advice and continuing influence of civilian counsel that he contested the charges and received such a heavy sentence.

Here, civilian counsel was only on the case for part of the pretrial preparation stage. The appellant had not cooperated with the authorities up to that point. Once the appellant released him, military defense counsel was in charge and advised the appellant again to accept a pretrial agreement with more realistic terms. As a result, the advice that the appellant received from his defense team as a whole concerning a pretrial agreement was not deficient. He was provided with the necessary advice to make an informed decision and cannot reasonably assert he was unaware of his comparative sentence exposure in deciding to proceed to trial, rather than accepting a pretrial agreement. *Day,* 969 F.2d at 43.

## B. Performance of Military Defense Counsel

The appellant contends his military defense counsel was ineffective for failing to advise him to change his pleas to guilty after seeing the overwhelming evidence in the Government's case and instead continuing with the trial. He argues that he was prejudiced because: (1) he was denied the opportunity to use the guilty pleas as a mitigating factor in sentencing; (2) he provided "confessional testimony" during the defense case-in-chief that allowed the Government to bring out aggravation evidence; and (3) his counsel's cross-examination of the co-conspirators about their guilty pleas made it appear to the members as if he would not accept responsibility by likewise pleading guilty. We disagree.

■ The appellant states that he admitted the full extent of his culpability to his military defense counsel during the weekend break, about halfway through the Government's case, after his counsel advised him that things were going badly for the defense. His counsel then suggested that they let the Government finish, then have the appellant testify and confess his guilt to all the charged offenses during the defense case-in-chief. *See* Appellant's Declaration of 4 Jul 2001 at ¶ 10. The defense case proceeded in just this fashion.

In reviewing the reasonableness of military defense counsel's actions, we are mindful of the admonition in *Strickland,* "[requiring] every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. Although this tactical decision by military defense counsel was unorthodox, after reviewing the record, we are not prepared to conclude that his actions were deficient, given the difficult circumstances at the time.

These circumstances were created by the appellant's decision to go to trial, despite his military defense counsel's advice about the strength of the Government's case and the desirability of a pretrial agreement, as well as the appellant's lack of candor with counsel regarding his culpability. As a result, by the time the appellant decided to give credence to the advice of his counsel, the situation for the defense was desperate and options for counsel extremely limited.

In the face of the appellant's inevitable conviction on most, if not all, of the charges, the strategy shifted to one of conciliation in an effort to gain credibility with the members during sentencing. The tactical decision by counsel, prior to findings, to concede guilt and put the appellant on the stand to admit his culpability was a reasoned tactical retreat in furtherance of that strategy and was made with the appellant's full concur-

rence.[5] *Compare Young v. Catoe*, 205 F.3d 750, 761 (4th Cir.2000)(holding that counsel was not ineffective for conceding, in the face of overwhelming evidence, that accused was technically guilty of murder and then putting accused on the witness stand to testify about the shooting, in an effort to build credibility with the jury for later argument that accused did not deserve the death penalty), *with Capps v. Sullivan*, 921 F.2d 260, 262 (10th Cir.1990)(holding that counsel was ineffective for having accused take the stand and admit all the elements of the crime in the hope of jury nullification, when there was evidence reasonably supporting a request for an entrapment instruction). *See also Anderson v. Calderon*, 232 F.3d 1053, 1089 (9th Cir.2000)(holding that counsel's concession of accused's guilt of first degree murder was a strategic choice and not ineffective assistance under *Strickland*); *Clozza v. Murray*, 913 F.2d 1092, 1099 (4th Cir.1990)(holding that counsel's concession of guilt to maintain credibility with jury was consistent with trial strategy and not ineffective assistance). *But see Francis v. Spraggins*, 720 F.2d 1190, 1194 (11th Cir.1983)(declaring that counsel may not concede guilt in the face of strong evidence "merely to avoid a somewhat hypocritical presentation during sentencing phase and thereby maintain his credibility before the jury," *when the accused, by his plea and testimony, seeks a not guilty verdict*).

Counsel hoped to build credibility with the members for himself and the appellant by demonstrating that the appellant was now being forthright and taking responsibility for his crimes. In turn, he hoped this effort would demonstrate the appellant's rehabilitative potential and thus support the appellant's request during sentencing that the members give him "a second chance," Record at 894, by allowing him to return to his family, as well as counsel's argument for minimal confinement. Given the circumstances that led to this change in strategy midway through the trial, we find counsel's performance was not objectively unreasonable. *See Strickland*, 466 U.S. at 691, 104 S.Ct. 2052 (noting that the influence of defendant's actions may determine the reasonableness of counsel's performance).

With regard to the alleged "prejudice" that supposedly resulted from his failure to change pleas, the appellant overstates the benefits that would have obtained at that point in the trial. A change of pleas that obviously results from the overwhelming evidence of guilt in the Government's case is unlikely to impress the members or the military judge. In fact, it is more likely to

**5.** After the prosecutor's closing argument on findings, the military judge questioned the appellant about whether he agreed with his counsel's trial strategy, which resulted in the following colloquy:

MJ: In your testimony, you did, in essence, admit your guilt to virtually all of these offenses. Did you realize that at the time you were testifying?

ACC: Yes, sir.

MJ: What I take to be happening here is a trial strategy by you with the advice of Captain Kaplan where you're trying to—as Captain Kaplan said basically lay open everything that's ever happened, basically let these members hear not just your words but hear the people who would testify against you and for them to make an informed decision what's going to happen with you for a number of years in the future. Is that really what you're trying to do here?

ACC: Yes, sir.

MJ: Captain Kaplan just got up; and he, basically, in his argument conceded to your guilt to almost all of the offenses less the TV and maybe the NFCU [Navy Federal Credit Union] attempted robbery. Was that your specific desire?

ACC: Yes, sir.

MJ: That is part of your ongoing strategy with Captain Kaplan to play to the members, if you will, that hey, at least I'm coming clean on what I've done; and I'm ready to get on with my life. And I've told you everything I've done. Is that basically what's happening?

ACC: Yes, sir.

MJ: I want to make sure that if you've got any problem with what Captain Kaplan is doing on your behalf that you tell me now. You have no problem with what he is arguing or what he is saying?

ACC: I don't have any problems, sir.

Record at 824–25.

arouse the ire of the members for having wasted their time. Moreover, assuming the military judge allowed a change in pleas, he need not instruct on its full mitigating effects, if time, effort, and expense to the Government were not saved by the belated pleas. *See United States v. Williams,* 26 M.J. 644, 649 (A.C.M.R.1988), *remanded on other grounds,* 27 M.J. 401 (C.M.A.1988)(summary disposition). In this case, however, the military judge did instruct that the appellant's admissions of guilt, notwithstanding his pleas of not guilty, should be considered as mitigating factors for sentencing purposes and that his admissions may be evidence of his first step towards rehabilitation. *See* Record at 916. Finally, unconditional pleas of guilty would have waived appellate review of the denial of his suppression motion, *United States v. Tarleton,* 47 M.J. 170, 172 (1997); Mil. R. Evid. 311(i), where he might have prevailed. Preservation of appellate review could only have occurred with *conditional* pleas of guilty, requiring the approval of the military judge and the consent of the Government. R.C.M. 910(a)(2). It is highly unlikely the Government would have consented.

By having the appellant testify, there was certainly the risk that aggravating evidence might be elicited on cross-examination. However, we note the appellant used his opportunity to minimize the dangerousness of his crimes by claiming that the firearms were only to scare the victims and that he would never have killed anyone. He also claimed that he did not steal a large screen television during the housebreaking incident at the Prater residence and explained why the plans to rob an armored car and the Marine Corps Federal Credit Union were aborted. The additional aggravating evidence from cross-examination was minimal and added little to what the Government had already introduced during its case-in-chief.

With respect to counsel's cross-examination of the co-conspirators, he asked if they had already pled guilty or were going to plead guilty in return for leniency on sentencing. It was clearly intended to call into question the credibility of these prosecution witnesses. The military judge recognized as much, because he instructed the members to consider the fact that these witnesses were "testifying under promises or hopes for leniency," Record at 854, when weighing their credibility. To the extent that these questions may have highlighted the fact the appellant did not plead guilty, it was consistent with counsel's attempt to portray the appellant favorably to the members as someone who did not need a promise of leniency to be truthful.

Even assuming counsel was deficient in continuing the trial as he did, instead of having the appellant change his pleas, the appellant has failed, under *Strickland,* to show prejudice. The Government presented overwhelming evidence of the appellant's guilt; there was no reasonable probability that, but for this error, the results of the trial would have been any different. *Young,* 205 F.3d at 762; *Toro,* 940 F.2d at 1069.

■ The appellant also contends that his military defense counsel was ineffective in preparing the sentencing case, because the only evidence presented was testimony from the appellant and his wife. We disagree.

According to the appellant, no defense evidence was presented concerning the character of his military service over the past 16 years—such as awards, decorations, and commendations—nor were character letters obtained from fellow Marines with whom the appellant had previously served. He also complains about the absence of any evidence of his family's financial situation and the failure to explore possible mental health problems that might have mitigated his offenses.

Addressing first his complaint regarding military character letters from fellow Marines, his family's financial situation, and possible mental health issues, the appellant fails to identify the Marines willing to provide such letters and the mitigating evidence as to his finances and his mental health that would have been helpful at trial. Absent such a showing, the appellant's complaint over these omissions lacks merit.

What counsel did present during sentencing was testimony from the appellant and his wife, in which he tried to soften the negative picture of the appellant arising

from these offenses by showing another side of the appellant's personality. Through the testimony of his wife, the members heard about the appellant's deprived childhood. She portrayed him as a considerate and loving husband and father, despite her shabby treatment of him during their 15 years of marriage. She relayed her daughter's feeling about not appearing at trial, because she could not bear to see what was going to happen to the considerate stepfather, who had treated her like his own child. His wife appealed to the members to take into account the appellant's troubled background, how it may have affected his behavior, and his possible need for psychological counseling. Finally, she conveyed her belief that lengthy confinement would not be helpful in light of the remorse that he had already expressed to her for his actions.

The appellant then testified about his family background, his reason for enlisting and some of his experiences in the Marine Corps, his regret and remorse for his actions, his desire to make things right by cooperating with the Government in the recovery of the stolen property, the loss of between $25,000 and $30,000 of separation pay when he was apprehended for these charges, his empathy now for the victims of his crimes, and his desire that the members give him a second chance. In all, the testimony that counsel provided to the members through these two witnesses totaled 15 pages of the transcribed record.

Although counsel did not emphasize the appellant's military record, some evidence had already been provided to the members by the Government through the admission of Prosecution Exhibit 65, service record book entries listing his combat history, expeditions, and awards record. The military judge summarized this information and instructed the members to consider it on sentencing. *See* Record at 915–16. While counsel could have introduced more evidence of the appellant's military record, the benefit to be gained was questionable. The appellant was a Marine staff sergeant who had just been convicted by the members of almost two dozen serious offenses spanning his last four and a half years of active duty. Whatever credit he may have been entitled to claim for his military accomplishments was clearly undone by his commission of these crimes, many of which occurred on Marine Corps installations, and his involvement of other Marines to assist him in his crimes.

We cannot say that counsel's decision to offset the Government's picture of the appellant as a violent and dangerous criminal by showing the appellant's compassionate and empathetic qualities (i.e., his positive attributes as a husband and father, his deprived background, his genuine remorse, and his total acceptance of responsibility) was unreasonable. It furthered counsel's strategic goal of establishing the appellant's rehabilitative potential in order to counter the prosecution's argument for lengthy confinement. From the evidence in the record, we believe that counsel, having had the opportunity to observe the members at trial and assess their disposition, made a reasoned decision to appeal to their sense of compassion by offering the individualized mitigating testimony of the appellant and his wife. It may be easy, in hindsight, to criticize his strategy as risky. "Yet, it is not whether [counsel] won or lost, it is how he played the game that counts." *Anderson,* 232 F.3d at 1089. Given the evidence and the available options, counsel's performance during sentencing was objectively reasonable and did not fall measurably below the level of performance ordinarily expected of a fallible attorney.

### C. Convening Authority's Clemency

Finally, even assuming that the combined performance of the appellant's defense team was ineffective, any prejudice that might have accrued as a result was adequately addressed by the substantial clemency that the appellant received from the convening authority.[6] *United States v. Alves,* 53 M.J. 286,

---

6. "While reassessment of a sentence by a reviewing authority does not in law serve to cure a trial error affecting the sentence in the absence of knowledge by the review authority of the error at the time of its action," *United States v. Johnson,* 1 M.J. 213, 216 (C.M.A.1975), we note that the convening authority, in granting clemency, considered some of the same complaints about the performance of counsel prior to taking his ac-

290 (2000). The convening authority reduced the appellant's adjudged confinement of 125 years by 50 years and then suspended an additional 35 years of the remaining confinement. As a result, the appellant need only serve 40 years of his sentence. Accordingly, no further relief is warranted.

## IV. Improper Argument by Trial Counsel

The appellant also asserts five assignments of error arising from trial counsel's sentencing argument. After review, we conclude they are without merit. Of these, only the following complaints require comment: (1) trial counsel's argument as to the amount of confinement that should be awarded for each offense; and (2) trial counsel's comment during his argument that, by not pleading guilty, the appellant did not accept responsibility.

The legal test we apply in reviewing a claim of improper argument has two prongs: The argument must be erroneous; if found to be erroneous, it must also result in material prejudice to the substantial rights of the appellant. *United States v. Baer*, 53 M.J. 235, 237 (2000).

After findings, maximum confinement that the appellant could potentially have received was 260 years. During his sentencing argument, the trial counsel provided to the members his assessment of what each offense was worth in terms of confinement. He briefly addressed each offense before telling the members how much confinement should be awarded for that offense. Totaling up the individual recommendations, the trial counsel asked the members to award 86 years of confinement. The military defense counsel had objected earlier *in limine* to this type of sentencing argument. The military judge overruled the objection, after instructing the trial counsel that he would not be allowed to advise the members of the maximum punishment for each offense.

 Unlike sentencing in some civilian. jurisdictions that allow consecutive or concurrent sentences when more than one offense is involved, the military practice is to impose one sentence for all offenses before

the court. *United States v. Gutierrez*, 11 M.J. 122, 123 (C.M.A.1981); *United States v. Montgomery*, 30 M.J. 1118, 1121 n. 4 (N.M.C.M.R.1989). This practice comports with the longstanding military tradition of a "unitary sentence." *United States v. Keith*, 1 C.M.A. 442, 449, 4 C.M.R. 34, 41, 1952 WL 2681 (1952). Under it, the trial counsel is permitted to "recommend a specific lawful sentence." R.C.M. 1001(g). We are unaware of any binding legal authority [7] that precludes him, in doing so, from recommending a total term of confinement that is based upon an assessment of the appropriate confinement for each offense. In fact, our superior court's holding in *Gutierrez* on a separate, but related, issue suggests just the opposite. If it was not improper in that case for the military judge to advise the members of the maximum punishment for each offense, *Gutierrez*, 11 M.J. at 124, we are hard pressed to conclude that the trial counsel's argument here was error. In any event, it is obvious from the adjudged sentence that the members disregarded trial counsel's recommendations for confinement.

 The appellant's other complaint addresses the following comment by the trial counsel during his sentencing argument:

Gentlmen, [sic] you have convicted him after his pleas of not guilty on every charge and every specification, every single one. *It was not until after the government's case that Staff Sergeant Garcia decided to take responsibility for his action....*

Go back to when you first heard him take the stand. You probably noticed each other's faces. A lot of people did. Go back and capture that feeling again when you heard a Staff NCO say, "I held a gun to Chesney's head in his ear." Do you remember that? Do you remember when he said that? We were hoping against hope when he gets up on that stand to have logical explanation, something, maybe something way down deep inside everybody in this jury box was thinking, "Doggone, it's a Staff Sergeant in the Marine

---

tion. *See* then-Capt Kaplan's Additional Clemency Request of 16 Jul 1999.

7. We considered the unpublished decisions that the appellant argued and attached to his brief.

Corps. Give me something buddy. What have you got?"

It's all a big mistake? No way....

Record at 896 (emphasis added). The appellant contends this argument was an improper attack on the exercise of his right to plead not guilty. He further complains the trial counsel was essentially arguing to the members that he had "tricked [them] into thinking there was an explanation for the charges and his pleas" and "implied that [he] should be held accountable for confessing ... and ... not defending himself." Appellant's Brief of 11 Jul 2001 at 44.

The appellant failed to object at trial. Therefore, his objection is waived, absent plain error. *United States v. Jenkins*, 54 M.J. 12, 19 (2000); R.C.M. 1001(g). In this instance, we find no plain error. The trial counsel is permitted "to argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *Baer*, 53 M.J. at 237. In determining whether there was error, the allegedly objectionable portion of the argument must be viewed in the context of the entire argument. *Id.* at 238.

We view the trial counsel's argument here not so much as a comment about the appellant's exercise of his right to plead not guilty as it was a comment about the appellant's explanation for his actions and his true criminal character. In that respect, it is significantly different than arguing that the accused had not pled guilty and had not stated that he "learned his lesson," which was deemed to be improper. *Johnson*, 1 M.J. at 215. It was a fair comment reasonably made about the seriousness of the charges relative to the appellant's testimony. *United States v. Garren*, 53 M.J. 142, 144 (2000).

As for the other part of the appellant's complaint about tricking the members into thinking there would be an explanation when he testified, we believe it mischaracterizes the trial counsel's comments. The trial counsel was simply pointing out that the appellant had no excuse or justification for his criminal behavior.

## V. Confessional Stipulation/*De Facto* Guilty Plea

The appellant contends that the military judge erred by failing to advise him of his rights pursuant to *United States v. Bertelson*, 3 M.J. 314 (C.M.A.1977) and *United States v. Williams*, 18 M.J. 186 (C.M.A.1984). He asks this court to set aside the findings and sentence for the military judge's failure to comply with *Bertelson* or, alternatively, to set aside the fine for his failure to comply with *Williams* After review, we hold the military judge did not err; but even if he did err, the appellant was not prejudiced.

In *Bertelson*, the accused pleaded not guilty, but entered into a confessional stipulation with the Government.[8] Our superior court held that, before accepting such a stipulation, the military judge must, among other things, inform the accused that the Government has the burden of proving his guilt beyond a reasonable doubt as to each element of each offense, that the stipulation relieves the Government of this burden; that the accused has a right not to stipulate; and that the stipulation cannot be accepted without his consent. *Bertelson*, 3 M.J. at 317. The appellant argues that his testimony was the functional equivalent of a confessional stipulation and that the military judge erred by failing to advise him that his testimony relieved the Government of its burden of proof. We reject this argument.

Although the appellant admitted his guilt at trial, the facts in this case are distinguishable from *Bertelson* A stipulation of fact is a binding agreement between the parties as to the existence of certain facts, which may not be contradicted. R.C.M. 811(e). There was no such agreement in this case, nor was the Government relieved of its burden of proof. The appellant's decision to testify was predicated on a change in strategy *after* the prosecution presented its evidence, as the defense began building a sentencing case. We, therefore, do not believe a *Bertelson* inquiry was required. However, even if the military judge erred by not conducting one, the appellant was not prejudiced, because the prosecution introduced "sufficient independent evi-

---

8. "[A] 'confessional stipulation' is a stipulation which practically amounts to a confession.... [I]t constitutes a *de facto* plea of guilty." *Bertelson*, 3 M.J. at 315 n. 2.

dence" to prove his guilt beyond a reasonable doubt. *United States v. Honeycutt*, 29 M.J. 416, 419 (C.M.A.1990).

In *Williams*, the court held that a fine may not be awarded when an accused pleads guilty, unless he is aware the maximum permissible punishment includes the possibility of a fine. *Williams*, 18 M.J. at 189. The appellant argues that his testimony prior to findings amounted to a *de facto* guilty plea and that the military judge erred by failing to advise him of the possibility of a fine if he was found guilty. We reject this argument, as well.

The appellant entered formal pleas of not guilty. Therefore, this is not a guilty-plea case, wherein advice as to the maximum possible penalty must be given. R.C.M. 910(c)(1). Even if we assume the appellant's testimony amounted to a *de facto* guilty plea, we note such advice is not expressly required under *Bertelson* even for a confessional stipulation, which is considered a *de facto* guilty plea. *See United States v. Watruba*, 35 M.J. 488, 491 (C.M.A.1992)(listing *Bertelson* requirements).

## VI. Sentence Disparity/Appropriateness

 The appellant contends his approved sentence of a $60,000 fine and confinement for 75 years is inappropriately severe, in comparison with the sentences received by his co-conspirators and in light of his years of military service and the circumstances surrounding his case. We disagree.

In raising the issue of sentence disparity, "an appellant bears the burden of demonstrating that any cited cases are 'closely related' to his . . . case and that the sentences are 'highly disparate.'" *United States v. Lacy*, 50 M.J. 286, 288 (1999). If he meets his burden, "the Government must show that there is a rational basis for the disparity." *Id.*

The appellant cites the cases of his co-conspirators, Lance Corporal (LCpl) Espinal, Private (Pvt) Felicies, and Sergeant (Sgt) Gutierrez, to support his argument. LCpl Espinal's adjudged and approved sentence included confinement for 10 years, of which confinement in excess of 42 months was suspended; Pvt Felicies' adjudged and approved sentence included confinement for 20 years; Sgt Gutierrez's adjudged sentence included confinement for 20 years, but the convening authority disapproved confinement in excess of 30 months. *See* Motion to Attach of 11 Jul 2001.

Generally, cases are closely related when "coactors [are] involved in a common crime, servicemembers [are] involved in a common or parallel scheme, or some other direct nexus [exists] between the servicemembers whose sentences are sought to be compared." *Lacy*, 50 M.J. at 288. The mere fact, however, that some of their offenses are closely related does not necessarily mean these cases, as a whole, are closely related. *See United States v. Wacha*, 55 M.J. 266, 268 (2001)(noting the cases were not closely related, even though appellant was drug supplier for his coactor, because only 4 of accused's 16 drug offenses involved his coactor); *United States v. Dorman*, 57 M.J. 539, 544 (A.F.Ct.Crim.App.2002)(finding the cases were not closely related, despite shared use of drugs, because appellant was convicted of additional serious offenses). Although the appellant committed a number of related offenses with his co-conspirators, he also committed additional unrelated offenses, as well.

Even if we were to assume these cases are closely related, the sentences are not highly disparate simply because the appellant received substantially more punishment than his co-conspirators. Although we consider the disparity relative to the numerical values of the sentences, we also consider it in relation to the potential maximum punishment. *Lacy*, 50 M.J. at 289. In this instance, the appellant was convicted of substantially more offenses. Therefore, his potential maximum punishment was substantially greater than his co-conspirators.

Finally, as the Government argued in its brief, there was a rational basis for the disparity in the sentences. Coupled with the fact that the appellant was convicted of more offenses, he was also the senior Marine involved in these joint criminal endeavors, he appeared to have a leadership role in many of them, and he did not plead guilty as his co-conspirators did.

The appellant also claims his sentence is inappropriately severe because of his years of military service before committing these offenses, the recovery of most of the stolen property, and the absence of physical injuries to any of the victims of his crimes. Having considered these matters, we hold the approved sentence is not inappropriately severe, given the character of the appellant and the nature and seriousness of his offenses. *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A.1982).

## VII. Illegal Pretrial Punishment

 The appellant contends for the first time that the conditions of his pretrial confinement violated Article 13, UCMJ, 10 U.S.C. § 813, because he was placed in maximum custody "special quarters" [also known as "solitary confinement"]. We disagree.

Our superior court noted that "Article 13 prohibits two types of activities involving the treatment of an accused prior to trial." *United States v. McCarthy*, 47 M.J. 162, 165 (1997). "[I]t prohibits the imposition of punishment or penalty prior to trial, [because] [s]uch an imposition entails a purpose or intent to punish an accused before guilt or innocence has been adjudicated." *Id.* The appellant makes no claim that his assignment to special quarters as a maximum custody detainee by brig authorities was done with a punitive intent.

It also "proscribes infliction of unduly rigorous circumstances during pretrial detention which, in sufficiently egregious circumstances, may give rise to a permissible inference that an accused is being punished, or may be so excessive as to constitute punishment." *Id.* It is this aspect of Article 13, UCMJ, that the appellant maintains was violated. He claims the conditions of his confinement in special quarters exceeded that which was needed to ensure his presence for trial.[9]

"The burden is on appellant to establish entitlement to additional sentence credit because of a violation of Article 13," UCMJ. *United States v. Mosby*, 56 M.J. 309, 310 (2002). In addition to his declaration, the appellant also attached records from the Marine Corps Brig at Camp Lejeune, North Carolina. *See* Appellant's Motion to Attach Documents of 11 Jul 2001. The brig records indicate the brig officials recommended that the appellant be placed in special quarters "due to the severity of his charges and possible lengthy sentence." Appellant's Summary Continuation Sheet of 10 Oct 1997.[10] The Government did not offer any evidence in rebuttal.

The nature and seriousness of the offenses and the potential length of confinement resulting therefrom are relevant factors that brig officials may consider in determining whether to place a detainee in special quarters. *United States v. Anderson*, 49 M.J. 575, 577 (N.M.Ct.Crim.App.1998). Our superior court has held that the placement of a detainee in solitary confinement simply because of the seriousness of his offense did not violate Article 13, UCMJ, in the absence of any evidence showing an intent to punish. *Mosby*, 56 M.J. at 310–11. In the same vein, it found in another case that the terms of an appellant's confinement in maximum custody at a Marine brig were not so egregious as to be "more onerous than necessary." *McCarthy*, 47 M.J. at 168. Finally, the appellant's failure to complain about the conditions of his pretrial confinement until now is "strong evidence" that Article 13, UCMJ, was not violated. *United States v. Huffman*, 40 M.J. 225, 227 (C.M.A.1994).

---

9. The appellant provided the following description of the conditions his confinement:

 While in maximum custody special quarters, I lived in a cell by myself, rather than in a squad bay arrangement with other confinees. I remained in my cell alone all day, except when released every morning to shower. About once a week I was allowed 15 minutes of "sunshine call" during which time I was allowed outside. Otherwise, I remained in my cell almost 24 hours per day. I was not allowed access to any legal materials or law

books, though I was allowed visitation with my attorneys. When I left my cell I was placed in shackles and was escorted by 2–3 guards. Appellant's Declaration of 4 Jul 2001 at ¶ 4.

10. Although this document is unsigned, it is prepared on an official form and contains all of the pertinent information, including the names and positions of the brig personnel involved. Since it is submitted by the appellant, without Government objection, we will assume its authenticity for purposes of this assignment of error.

The appellant, however, argues that, in *United States v. Scalarone*, 52 M.J. 539 (N.M.Ct.Crim.App.1999), we found that similar pretrial conditions involving special quarters had exceeded the limits on liberty necessary to ensure the accused's presence for trial, and we awarded day-for-day credit, notwithstanding the fact that the claim was first raised on appellate review. Our holding in that case was not based solely on the seriousness of the charges, which supposedly made the detainee an escape risk, but also on the brig's "Special Handling Instructions" for him, which together imposed conditions "more rigorous than necessary to ensure his presence for trial." *Id.* at 544. Accordingly, we hold the protections afforded to the appellant under Article 13, UCMJ, were not violated.

## VIII. Conclusion

We have considered the remaining assignments of error and find them to be without merit. Although not assigned as error, we note the court-martial promulgating order of 8 September 1999 incorrectly reflects a finding of guilty for Specification 8 of Charge VI.[11] In fact, the trial counsel withdrew that charge prior to findings, because it was charged in the alternative with Specification 1 of Charge III. Record at 683. Since we find no prejudice to the appellant from this error, correction by means of the supplemental promulgating order alone will suffice. *United States v. Graf,* 35 M.J. 450, 467 (C.M.A.1992).

We affirm the findings and sentence, as approved on review below. The supplemental promulgating order shall reflect that Specification 8 of Charge VI was withdrawn.

Senior Judge FINNIE and Judge RITTER concur.

11. This offense is listed in the Staff Judge Advocate's Recommendation of 14 June 1999 as Specification 4 of Charge VI, which also incorrectly reflects the finding.